**DORAN v. UNITED STATES and five other titles.**

**No. 12221.**

United States Court of Appeals Ninth Circuit.

Feb. 4, 1950.

Margolis & McTernan, Ben Margolis John T. McTernan, Los Angeles, Cal. (William B. Murrish, John W. Porter, Esther Shandler and Jack Tenner, Los Angeles, Cal., of counsel), for appellants.

James M. Carter, U.S. Atty., Robert J. Kelleher, Asst. U.S. Atty., Los Angeles, Cal., Max H. Goldschein, Sp. Asst. to Atty. Gen., for appellee.

Julius M. Keller, San Francisco, Cal. (Norman Leonard, George G. Olshausen, San Francisco, Cal., of counsel), for Civil Rights Congress, as amici curiæ.

Ibanez & Snider, Los Angeles, Cal., for United Steel Workers of America et al., as amicus curiæ.

Paul Major, San Pedro, Cal., for Carey McWilliams et al., as amicus curiæ.

Before DENMAN, Chief Judge, and MATHEWS, STEPHENS, HEALY, BONE, ORR and POPE, Circuit Judges.

DENMAN, Chief Judge.

These are six appeals from judgments and commitments in civil contempt for refusing to answer questions addressed to appellants by the government's attorneys while witnesses before the federal grand jury of the United States District Court for the Southern District of California, sitting in Los Angeles, California. As in the appeals in the case of Alexander et al. v. United States, 181 F.2d 480, in this court, these appeals are submitted on the briefs and record in the instant case and the briefs and record in the Alexander case.

Among the questions asked which the appellants refused to answer on the ground of self incrimination are the following:

"2. Do you know the organizational set-up of the Los Angeles County Communist Party?"

"13. Do you know who in the Communist Party in Los Angeles is in charge of membership or membership rolls?

"14. Do you know any person in the County of Los Angeles who advocates the overthrow of the government of the United States by force and violence?

"15. Do you know any organization in the County of Los Angeles that has for its purpose the overthrow of the United States government by force and violence?"

■ From the facts stated common to both the instant and the Alexander cases and the reasons stated in the latter, we hold the answers to these four questions would tend to incriminate appellants and

that they committed no contempt in refusing to answer on that ground.

■ Further questions put to all the appellants are, "Do you know Dorothy Healy?" "Do you know her business or occupation?" and others to discover her occupation and whereabouts. The district court held appellants in contempt although proof was offered that she was regarded as the organizing secretary of the Communist Party of Los Angeles County and in possession of its membership roll. We do not agree. The Dorothy Healy questions are but a continuation of the inquisition of which the four questions, supra, show the significance. Appellants' defenses to an indictment under the Smith Act 18 U.S.C.A. § 2385, well may be that they knew no one connected with the Los Angeles Communist Party's conspiracy to violate the Smith Act.

The appellant Blair was asked, in addition to the four questions first stated supra, "Do you know Elizabeth Glenn?" and refused to answer the question. On this the refusal was justified by the offered proof that it was believed that Elizabeth Glenn was in charge of the financial affairs of the Communist Party at Los Angeles County and had remitted 50% of that organization's receipts to the National Communist Party in New York, whose principal members were shown to be tried under indictment in the Southern District of New York for violation of the Smith Act. Likewise justified is his further refusal to answer the question, "Do you know Mrs. Houdek?" evidence being offered that it was feared that she was an officer or representative of the Communist Party of Los Angeles.

One of the appellants, Brodsky, was asked his occupation. The following is the colloquy showing the tie-in with the likely existence of an organization violating the Smith Act:

"A. I believe I did. I would like to answer that now. I am an organizer.

"Q. Who are you an organizer for? A. That question I refuse to answer on the ground it might tend to incriminate me.

"Mr. Carter: You are a great disappointment.

"Q. (By Mr. Carter): Will you answer the question [previously asked] whether you know any organization of the County of Los Angeles which has for one of its announced purposes the overthrow of the government of the United States by force and violence? * * * A. On advice and after consultation with my counsel, I would like to answer that I refuse to answer that question on the ground it would tend to incriminate me, and it is an obvious inquiry into my political beliefs and associations."

Obviously, to use the language of the Supreme Court in Arndstein v. McCarthy, 254 U.S. 71, 73, 41 S.Ct. 26, 65 L.Ed. 138, "It is impossible to say from mere consideration of the questions propounded, in the light of the circumstances disclosed, that they could have been answered with entire impunity."

The appellant Doran was asked, in addition to the first four questions, "Do you know Ned Sparks?" We think the offer of proof that Sparks was thought to be the chairman of the Communist Party of Los Angeles County warrants her refusal to answer this question.

Further as to a question asked all appellants, "Have you seen Dorothy Healy recently?" and the questions to Blair about knowing Elizabeth Glenn and Mrs. Houdek, it appears there is a different ground of self incrimination warranting the refusals to answer them. It appears that the United States Attorney has caused subpoenas and bench warrants to be issued for them. The applications charged not only Glenn and Houdek with deliberate avoidance of service of subpoena and obstruction of justice but also that "various witnesses" for whom subpoenas had issued "have been following a *common course of conduct* in avoiding service and *impeding the functioning of said grand jury.*" (Emphasis supplied.) This plainly applied to Healy, Glenn and Houdek and with equal plainness

charged a conspiracy to obstruct the adminstration of justice in violation of 18 U.S.C.A. §§ 1501 and 371. Section 1501 describes the crime of obstructing an officer in the service of a writ and section 371 the crime of conspiring "to defraud the United States" by interfering with its judicial processes.

Appellants refused to answer these questions out of fear of incrimination under that statute and they so asserted below.

It is to be recalled that appellants themselves were involved in the proceedings that Healy, Glenn and Houdek were charged with obstructing. The charge of a "common course of conduct" by "various witnesses for whom subpoenas had been issued" might well include them. Appellants had been the subject of more than casual interest, and the contempt charges against them were predicated also upon obstruction of justice.

Answers to these questions well may be impugning. Cf. United States v. Cusson, 2 Cir., 132 F.2d 412.

For these reasons and those more fully stated in the Alexander cases, the judgments are reversed. The proceeding is dismissed with respect to the refusal to answer the questions asked other than those following. With respect to the refusals to answer questions asked concerning Dorothy Healy, Elizabeth Glenn, Mrs. Houdek, and Ned Sparks, the cases are remanded, the district court's orders refusing to allow the tendered proof of these persons' believed connection with the Communist Party are set aside and the court ordered to admit such proof, if any there be.

POPE, Circuit Judge.

I concur in the result only and with the reservations noted in my concurring opinion in Alexander v. United States, supra.

MATHEWS, HEALY, and BONE, Circuit Judges (dissenting).

We think that the judgments in all these cases should be affirmed.