KASINOWITZ v. UNITED STATES.

STEINBERG v. UNITED STATES.

DOBBS v. UNITED STATES.

No. 12,217.

United States Court of Appeals
Ninth Circuit

April 21, 1950.

Rehearing Denied June 1, 1950.

Bone, Healy, and Mathews, Circuit Judges, dissented.

Margolis & McTernan, Ben Margolis, John T. McTernan, Los Angeles, Cal., (William B. Murrish, John W. Porter, Esther Shandler and Jack Tenner, Los Angeles, Cal., of counsel) for appellants.

Ernest A. Tolin, U. S. Atty., Robert J. Kelleher, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Julius M. Keller, San Francisco, Cal., (Norman Leonard, George G. Olshausen, San Francisco, Cal., of counsel) for Civil Rights Congress, as amicus curiae.

Ibanez & Snider, Los Angeles, Cal., for United Steel Workers of America, et al., as amicus curiae.

Paul Major, San Pedro, Cal., for Carey McWilliams, et al., as amicus curiae.

Before DENMAN, Chief Judge, and MATHEWS, STEPHENS, HEALY, BONE, ORR and POPE, Circuit Judges.

DENMAN, Chief Judge.

These are three appeals from judgments in criminal contempt sentencing each appellant to one year in jail for refusing to answer questions, later considered, in the same grand jury investigation as that in the appeals here in Alexander v. United States, 9 Cir., 1950, 181 F.2d 480.

The three appellants are of a group of thirty persons chosen by the United States Attorney because, he says, he thought he could obtain from them the whereabouts of the membership records of the Los Angeles County Communist Party. The United States Attorney directed that the thirty subpoenas be served at seven o'clock in the morning of the same day because "unless served at that time it would be impossible to effect service thereafter on them."

The Federal Register had disclosed only the month before that the Attorney General classified the "Communist Party U.S.A." as one seeking to alter the form of the government of the United States by unconstitutional means, 13 F.R. 6138. A person properly could infer that the Los Angeles branch of the United States Communist Party had the same subversive purpose, an inference sustained by the statement of the attorney General that the designation of the "Communist Party U.S.A." "includes, *of course*, all the state and local branches and factions of the parent groups." 14 F.R. 4708. (Emphasis supplied.)

It is obvious that such subversive activities would be secret. Persons, like appellants, finding themselves chosen as one of the group of thirty "in on the secret," that is, selected because they knew of the whereabouts of the records of a membership likely to be secreted, well could regard the government as having them under suspicion.

Appellants, with seven others, had been adjudged guilty of civil contempt for failing to answer other questions put in the same grand jury proceeding—judgments

reversed in the Alexander cases, supra. Among these questions were:

"Do you know the names of the county officers of the Los Angeles County Communist Party?"

"Do you know the table of organization and duties of the county officers of the Los Angeles County Communist Party?"

The civil contempt judgments against the three appellants and seven others were entered on October 26, 1948. In the Los Angeles Examiner of the next morning appeared an article describing the contempt proceedings in which the United States Attorney, who had participated in them, is quoted as saying: "This is only the opening gun in the government's inquiry into subversive and disloyal groups."

The United States Attorney here admits the Examiner reported under the headline "Officials Plan 'All-Out' Red Inquiry Here," the following:

"Ten witnesses are jailed for refusing to answer in probe.

"Communist groups and activities in Southern California are scheduled to undergo a 'top-to-bottom' investigation by a special Federal grand jury here.

"This was indicated by high government officials yesterday after ten witnesses were committed to jail for refusing to answer grand jury questions.

" 'This is only the opening gun in the government's inquiry into subversive and disloyal groups,' United States Attorney James M. Carter, declared."

The effect of the Examiner's statements is heightened by the fact that they were effectively verified in a colloquy between the United States Attorney and counsel for the appellants, in which the United States Attorney carefully avoided denying his responsibility for this publication.

As indicated in our opinion in the Alexander case, supra, we are not in accord with the contention that a grand jury witness cannot possibly form a reasonable apprehension from matters stated in the press that answers to questions may incriminate him.[1] Here the report is in the press of the city of the prosecution and the statement reported is of the prosecutor himself about the nature of the grand jury proceedings.

Within a week of this publication in the Examiner, the three appellants, on November 3, 1948, were again taken before the grand jury which, as appears from its later presentment, was inquiring to "ascertain the *official* identity of one Dorothy Healy; the identity of the person or persons in charge of the books and records of the Los Angeles County Communist Party showing or pertaining to the membership of said organization." (Emphasis supplied.)

In so seeking to ascertain the "official" identity of Dorothy Healy in connection with the identity of the person having the books and records of the Los Angeles Coun-

1. The following shows the fallacy of such a contention. One Albert Walter finds himself served at seven o'clock in the morning with a subpoena to appear before a grand jury at 10 o'clock a. m. that day. He wonders why until, at breakfast, he reads in the morning Examiner an Associated Press dispatch stating that the Attorney General had learned that he, Walter, and one Lydon William had conspired to counterfeit and circulate twenty dollar bills; that they have made many such counterfeits; that Walter has passed certain of them for his hotel rooms and meals and in the purchase of clothing; and that the Attorney General is seeking the indictment of Walter and William each as counterfeiters and both as conspirators to counterfeit.

On being sworn before the grand jury, Walter is asked "Do you know Lydon William?" He refuses to answer on the ground the answer may incriminate him, and produces the Examiner with its Associated Press dispatch which he testifies is the source of his apprehension of incrimination. No other evidence is produced. In the contempt proceedings the court states, "It is reasonable enough what Walter contends about it being a part of the prosecution's proof of a conspiracy between two persons that the one conspirator knew the other, but it is the law that no one can have a reasonable apprehension that a question may tend to incriminate him from anything he reads in a newspaper, and hence I sentence him to a year's imprisonment." Here is much more than the "irresponsible gossip" of a newspaper, held pertinent in United States v. Weisman, 2 Cir., 111 F.2d 260, 262.

ty Communist Party, each of the three appellants was asked and refused to answer on the ground that the answers might be incriminating, questions substantially as follows:

"Do you know Dorothy Healy?"

"Do you know her *business* or home address?"

"Do you know her *occupation*?"

"Do you know where she can be located?"

"Do you know whether Dorothy Healy is married?"

"If so, what is her husband's name?"

"Do you know what his *occupation* is?"

(Emphasis supplied.)

The three appellants were brought before the court and on November 12th on the suggestion of the Attorney General, the court heard the witness Dobbs privately in chambers to determine whether the answers to these questions would tend to incriminate the witness. At the request of that appellant the hearing was made public. This witness Dobbs there testified:

"Mr. Dobbs: In view of the fact that there have been many newspaper articles of recent date stressing the point or emphasizing that the government is going to conduct a full-scale investigation of Communist activities, and in the publicity relative to the indictment of the 12 Communist leaders, or alleged Communist leaders, that come up, I believe, next Monday for trial, and in view of the fact that the government takes the position that aliens who may be members of the Communist Party are subject to deportation proceedings because of the government's contention that Communists are advocates of force and violence against the government, and in view also of the whole spreading thesis through various committees of the guilt-through-association theory, that I still maintain the position that I refuse to answer questions about Communist organizations, alleged Communist Party members, in view that the answers to these questions might incriminate me.

"For instance, I have read that Mr. Sparks and Mrs. Healey are leaders in the Communist Party and if I answer these questions relative to these people or any knowledge I may have of these people, that I am afraid that my answers might tend to link me to the Communist Party and that these answers before the Grand Jury might tend to create a chain of evidence that might be used against me."

"My thinking on it is that, that in view of the fact that the government maintains that—well, I will put it this way—there are now I believe around 150 or 160 cases throughout the country of deportation proceedings of people who are being deported because they are Communists and, according to the government, therefore favor the advocacy of the overthrow of the government by force and violence. It is only that I am afraid if my testimony before this Grand Jury might link me to the Communist Party I too would fear that possible proceedings could come against me. Not that I am afraid of being deported. Of course not."

Under similar circumstances on that day, appellant Kasinowitz stated:

"Well, your Honor, I hold to the position that I might be incriminated principally on three grounds:

"First, the developments which have preceded our involvment in this grand jury hearing, particularly with regard to the trials in New York which come up in a few days, and also with respect to the fact as was indicated in court that the Communist Party is viewed and so designated by the Attorney General's office as a subversive organization, and thirdly on the grounds that in regard to this particular question I have become aware of the fact that Dorothy Healey is or was a leading officer of the Communist Party in Los Angeles, and I feel that my answering of the questions that are directed to me I might place myself in the position of incrimination."

Appellant Steinberg then similarly stated:

"Your Honor, I am aware, through reading the newspapers, of efforts on the part of the government to accuse, to charge the leadership of the Communist Party with overthrowing the government by force and violence for violation of the Smith Act, as

well as the attempts on the part of the government to deport people because of membership in the Communist Party, and I feel that tying myself in any way in answering these questions would tend to incriminate me."

The witnesses were ordered back to the grand jury. The questions to each were repeated; each again refused to answer and the grand jury make its presentation to the court to that effect. The court treated the presentment as if it were an indictment for a criminal contempt. To these presentments the appellants pleaded not guilty.

After hearing and the taking of evidence, including a repeat of the testimony of the three appellants given to the judge on November 12th, a judgment was entered for each appellant holding him guilty of criminal contempt, from which followed these appeals. The ground of the appeals is that the facts judicially noticeable and those shown at the trial of the appellants warranted a reasonable apprehension of self-incrimination, if the questions regarding Mr. and Mrs. Healey were answered, in a likely prosecution under the Smith Act (28 U.S.C. 2385) and the general prohibition against conspiracy to commit an offense against the United States (18 U.S.C. 371). The pertinent provisions of the statutes are,

"Whoever knowingly or willfully advocates, abets, advises, or teaches the duty, necessity, desirability, or propriety of overthrowing or destroying the government of the United States or the government of any State, Territory, District or Possession thereof, or the government of any political subdivision therein, by force or violence, or by the assassination of any officer of any such government; or

＊  ＊  ＊  ＊  ＊  ＊

"Whoever organizes or helps or attempts to organize any society, group, or assembly of persons who teach, advocate, or encourage the overthrow or destruction of any such government by force or violence; or becomes or is a member of, or affiliates with, any such society, group, or assembly of persons, knowing the purposes thereof—

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both, and shall be ineligible for employment by the United States or any department or agency thereof, for the five years next following his conviction." 18 U.S.C. 2385.

"If two or more persons conspire either to commit any offense against the United States ＊ ＊ ＊ and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both." 18 U.S.C. 371.

The offenses defined in the foregoing language include at least the following:

(a) Knowingly or wilfully advocating the overthrow of government by force or violence;

(b) Knowingly or wilfully abetting such advocacy or such overthrow;

(c) Organizing a society, etc. which teaches, advocates or encourages the overthrow of government by force or violence;

(d) Helping or attempting to organize such a society;

(e) Becoming a member of any such society knowing its purposes;

(f) Affiliating with any such society knowing its purposes; and

(g) Conspiracy to do any of the foregoing.

At the hearing below, the district court properly refused to allow appellants to require the United States Attorney, called as a witness, to declare his purpose in examining them before the grand jury. This, however, is entirely different from *voluntary* statements of the prosecutor such as reported in the Los Angeles Examiner, that the grand jury proceeding is an inquiry of the government into subversive and disloyal groups, or to appellants' counsel respecting the purpose of the grand jury, later considered. The Examiner statement was offered in evidence, and we regard it as highly relevant on the issue of whether the witness may have a reasonable apprehension that his answers to questions showing his knowledge of such groups may incriminate him. If the United States Attorney had testified (which he did not) that he did not make the Examiner statement, the cross examination could have been controlled to

prevent an inquiry as to the government's actual purpose in conducting the examination of the witnesses.

The United States Attorney admitted he had stated to appellants' counsel that "probably" what the grand jury was trying to find out was that Dorothy Healy was the organizing secretary of the Los Angeles Communist Party. Since the grand jury's presentment states it is seeking to ascertain her "official" identity, it is difficult to imagine any other purpose than to connect her with some office of that party.

The parties are agreed that the legislature of the State of California created a Joint Fact Finding Committee on Un-American Activities of which Senator Tenney was chairman; that this committee held investigations and made a report in which it found that the Communist Party of the United States advocated the overthrow of the government by force; that Dorothy Healy is the executive secretary of the Los Angeles County section of that party; that appellant Dobbs is named as labor secretary of the Los Angeles branch; and that Philip Bock, its youth director, is one of the group of thirty subpoenaed at the same time and one of the ten the district court held in the Alexander case, supra, to have committed a civil contempt. The Tenney report also names the same persons as the national secretariat of the Communist Party as those named in the New York indictment charging William Z. Foster and the eleven others with conspiracy to overthrow the government by force. United States v. Foster, D. C., 83 F.Supp. 197, 198.[2]

The court sustained the prosecution's objection that the portions of the report read were "incompetent, irrelevant and immaterial, not the proper way to prove the facts allegedly contained therein."

Here is the same error we have before considered. The issue is not whether these facts exist. The issue to be decided by the court is whether appellants had reasonable grounds for believing that the facts might be true. Here they are found to be true by a tribunal of the dignity of this fact finding committee of the California Legislature. Whatever question there may be concerning one acquiring a rational apprehension of impending prosecution from newspaper reports, there can be no doubt that one may rationally have such apprehension from the reports of the testimony and facts found by such a committee.

Appellants also knew through their common counsel that, on the same November third, in the same investigation, Brodsky, so named in the Tenney report, had been asked before the grand jury questions similarly indicating that what was being sought by the grand jury was evidence of persons and organizations in Los Angeles County

2. "The Communist Party keeps its publicly avowed members down to the smallest possible number. The national headquarters of the Communist Party of the United States is located at 35 East Twelfth Street in New York City.

"The Daily Worker is the official national publication of the Communist Party and the People's Daily World serves the West Coast.

"The national chairman of the Communist Party is William Z. Foster, possibly one of the most outspoken traitors the United States has ever tolerated.

"The general secretary is Eugene Dennis, alias Waldron. The administrative secretary is John Williamson. The office of treasurer is vacant since the death of Charles Krumbein.

"A National Secretariat is composed of William Z. Foster, Eugene Dennis, Robert Thompson, John Williamson, Benjamin J. Davis, Jr., John Gates, Gil Green, Gus Hall, Irving Potash, Jack Stachel, Carl Winter, and Henry Winston . . .

"The California headquarters is now located at 942 Market Street in San Francisco. William Schneiderman is the California State chairman . . .

"Nemmy Sparks is the chairman of the Los Angeles County section. The Los Angeles County section includes the following: Ben Dobbs [appellant], labor secretary; Elizabeth Ricardo, press director; Pettis Perry, minorities chairman; Dorothy Healy, organizing secretary; Sidney Burke, editor People's Daily World; Emil Freed, chairman, Sixteenth Congressional District; Alvin Averbuck, section organizer; Harry Daniels, legislative director; Jim Forrest, harbor section organizer; Merel Brodsky, veterans' director; Phil Bock, youth director; and Mort Newman, Carver Club section secretary." (Emphasis supplied.)

seeking to overthrow the government by force. They are:

"Do you know any person in the County of Los Angeles who advocates the overthrow of the government of the United States by force and violence?" and

"Do you know any organization in the County of Los Angeles that has for its purpose the overthrow of the United States government by force and violence?"

It is also agreed that the Tenney report on subversive activities stated of Dorothy Healy that she was secretary of the Los Angeles Communist Party and her husband, Don Healy, was registered as a member of that party.[3]

The court held "immaterial" this evidence concerning Dorothy Healy and her position among other officials of the Communist Party of the United States and its branches, following a prior ruling in which it stated:

"A further ground and basis for my ruling is that it is immaterial whether Dorothy Healy is secretary of the Communist Party or is the Communist Party. *As I have heretofore ruled, that is no crime, to know anybody.*" (Emphasis supplied.)

This ruling that the questions respecting Dorothy Healy must be answered because "that is no crime, to know anybody" we think is the basic error underlying the court's decision in this, the Alexander and the Doran cases. The question which the witness may refuse to answer need not of itself require his admission of the commission of a crime, otherwise, as stated in United States v. Weisman, 111 F.2d at page 262, the witness "will be forced to disclose those very facts which the privilege protects."

In the Weisman case the inquiry, equally innocent, was whether the witness knew anyone who visited, lived in or stayed at Shanghai in the years 1934 to 1939. In United States v. Cusson, 2 Cir., 132 F.2d 413, 414, the question was whether the witness had met "any of the Groveses" upon a visit to Philadelphia in 1941. Equally innocuous were the questions, in United States v. Zwillman, 2 Cir., 108 F.2d 802, 803, asking the witness who were his business associates in each year from 1928 to 1932. Likewise, those first stated in this opinion were innocent on their face, yet we held in the Alexander case that, in their setting of fact, the witnesses rationally could infer that they were incriminating, and reversed the conviction for contempt for refusing to answer them.

In the Alexander case, there was admitted in evidence a copy of the New York indictment of Foster and eleven others for conspiracy under the Smith Act and a copy of the indictment of one of the twelve for his individual offenses under that act, with the stipulation that there was a similar one for each of the others. The court in this proceeding refused to admit these copies of indictments when offered by appellants and there is no admission that the copies are true copies or that such indictments exist.

We are of the opinion that, without the admission of the New York indictments, the evidence discloses a setting making it likely that the answers concerning Dorothy Healy and her husband may be directly incriminating or, if not, may lead to such evidence. As we said in our Alexander opinion of the question "Did you know Ned Sparks?" the tie-in with the incriminatory character of the prior questions to appellants concerning the names of the officers of and the organization and duties of the Los Angeles County Communist Party, is this evidence warranting appellants' belief that Dorothy Healy is that party's secretary. These appellants' defense in a criminal prosecution well may be that they knew no

3. "The Joint Fact-Finding Committee on Un-American Activities subpoenaed Dorothy Healy, who testified before the committee on Wednesday, January 2, 1946. Mrs. Dorothy Healy is presently the secretary of the Communist Party of Los Angeles. She was a Young Communist League organizer under the name of Dorothy Ray. She was formerly the wife of Louis Schneiderman, brother of William Schneiderman, present secretary of the Communist Party of the State of California. She is presently the wife of Don Healy, former chairman of the Los Angeles branch of labor's Non-Partisan League and formerly registered as a member of the Communist Party in the County of Los Angeles."

638

one connected with the Communist Party's conspiracy to violate the Smith Act.

The judgments against appellants are reversed, and the criminal contempt proceedings in the district court ordered dismissed.

POPE, Circuit Judge.

I concur in the result.

MATHEWS, HEALY and BONE, Circuit Judges (dissenting).

We think that the judgments in all these cases should be affirmed.