CONNELLY v. UNITED STATES DIST. COURT IN AND FOR THE SOUTHERN DIST. OF CALIFORNIA, CENTRAL DIVISION et al.

No. 13053.

United States Court of Appeals Ninth Circuit.

Aug. 24, 1951.

As Amended Sept. 6 and 10, 1951.

Ben Margolis and Daniel G. Marshall, Los Angeles, Cal., for petitioner.

Ernest A. Tolin, U. S. Atty. Alexander Macdonald and Jackson W. Chance, all of Los Angeles, Cal., for respondents.

A. L. Wirin, Los Angeles, Cal., amicus curiae, for American Civil Liberties Union.

Before DENMAN, Chief Judge, and STEPHENS and BONE, Circuit Judges.

DENMAN, Chief Judge.

Petitioner seeks our writ of prohibition[1] forbidding the respondent judge to act on petitioner's motion to reduce petitioner's bail, theretofore fixed at $75,000.00 by the respondent judge, for his release pending his trial under an indictment filed in respondent's District Court for the Southern District of California.

The indictment charged, inter alia, that petitioner and some eleven other persons conspired to commit the offense against the United States of:

" * * * unlawfully, wilfully and knowingly to organize and help organize as the Communist Party of the United States of America a society, group, and assembly of persons who teach and advocate the over-

---

1. The respondent judge has not questioned the power of this court to issue its writ of mandamus or prohibition to prevent him from exercising any jurisdiction over the petitioner, if a proper showing of his prejudice has been made. As stated by the Supreme Court in Berger v. United States, 255 U.S. 22, 36, 41 S.Ct. 230, 234, 65 L.Ed. 481: "The remedy by appeal is inadequate. It comes after the trial and if prejudice exist it has worked its evil and a judgment of it in a reviewing tribunal is precarious. It goes there fortified by presumptions, and nothing can be more elusive of estimate or decision than a disposition of a mind in which there is a personal ingredient." (Emphasis supplied.) In the Berger case the issue of the sufficiency of the affidavit was decided on appeal. The writ of prohibition aids this appellate jurisdiction of ours by preventing a useless appeal in the event of the conviction in a prosecution presided over by a trial judge exercising a juris-

diction he does not possess. In Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 23, at page 26, 63 S.Ct. 938, at page 941, 87 L.Ed. 1185, the Supreme Court states: "The traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so. Ex parte Peru, supra, [318 U.S. 578, 584], 63 S. Ct. 793, [87 L.Ed. 1014] and cases cited; Ex parte Newman, 14 Wall. 152, 165–166, 169, 20 L.Ed. 877; Ex parte Sawyer, 21 Wall. 235, 238, 22 L.Ed. 617; Interstate Commerce Comm'n v. United States ex rel. Campbell, 289 U.S. 385, 394, 53 S.Ct. 607, 611 77 L.Ed. 1273." (Emphasis supplied.) The writ is particularly applicable in such a case as this where, as the Berger case states, "The remedy by appeal is inadequate."

throw and destruction of the Government of the United States by force and violence, in violation of Section 3 of the Smith Act, 54 Stat. 671, 18 U.S.C. (1946 Ed.) 11, and 18 U.S.C. (1948 Ed.) §§ 371 [2385];

"It was part of said conspiracy that said defendants and co-conspirators would become members, officers, and functionaries of said Party, knowing the purposes of the Party, and in such capacities would assume leadership in said Party and responsibility for carrying out its policies and activities up to and including the date of the filing of this indictment."

Petitioner, pursuant to 28 U.S.C. § 144[2] filed with the respondent judge the affidavit of himself and the eleven other indicted persons alleging certain facts respecting the statements of the respondent judge.

It was agreed at the hearing that, since petitioner so was indicted, a colloquy, stated in the affidavit, occurred between Daniel C. Marshall, then appearing in the indictment proceeding as attorney for the petitioner Connelly, the respondent judge and another attorney. The affidavit's statement of the colloquy is as follows:

"On August 3, 1951, the defendant, Connelly, was informed by his counsel, Daniel G. Marshall, that the said counsel felt it his duty to inform him of an incident which had occurred the previous day.

"On that day said counsel was in the Federal Courthouse on some other legal matters and was proceeding to the attorneys' cloakroom when he encountered the said James M. Carter accompanied by another attorney. The said Judge said, 'Looking for me, Dan?' Counsel replied in the negative, that he was merely going to the attorneys' cloakroom. The said Judge then said, 'I am sorry to see you getting mixed up with these Commies, Dan. They're just trying to use you.' Counsel replied, 'I'm not a wild man. Connelly is a friend of mine and I think he is right about this and I am going to bat for him.' The other attorney who was present then stated that he knew counsel and his wife, and they were fine people. The said Judge then stated, 'I am sorry to see you getting mixed up with the Commies. We must have another long talk.'"

A part of the facts to be proved against petitioner and his alleged co-conspirators are those facts of the indictment's allegation that the Communist Party of the United States is an "assembly of persons who teach and advocate the overthrow of the Government of the United States by force and violence." A part of the affidavit concerns a statement of the respondent judge who, prior to his appointment as a district judge, was United States Attorney for the Southern District of California and had prosecuted a number of the petitioner's alleged co-conspirators for contempt in refusing to answer questions found by us to be incriminating.[3] This statement was made in an address by respondent judge at a meeting of the Lions Club in Los Angeles, in which he was discussing the contempt proceedings he was then conducting. He was called as a witness in one of the contempt proceedings concerning his Lions Club statement and admitted he there described such persons as he was prosecuting as *hiding behind* the Bill of Rights and the Constitution." (Emphasis supplied.) Of

---

2. "§ 144. Bias or prejudice of judge

"Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

"The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the

term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith. [June 25, 1948, c. 646, 62 Stat. 898] As amended May 24, 1949, c. 139, § 65, 63 Stat. 99."

3. Kasinowitz v. United States, 9 Cir., 181 F.2d 632; Alexander v. United States, 9 Cir., 181 F.2d 480; Doran v. United States, 9 Cir., 181 F.2d 489.

this it was admitted at the hearing here that he further stated:

"A. I was referring generally to the manner in which *Communists* claim constitutional rights under a Bill of Rights and a Constitution and at the same time *apparently would destroy that very document and the government that it rests upon.*

"Q. And you were proceeding upon the basis then that the Communist Party of the United States, the Communist Party of Los Angeles, was an illegal conspiracy to overthrow the government of the United States, is that right? A. I didn't specify either Communist Party of the United States or of Los Angeles County; I just talked about the *Communist Party*.

"Q. And that is what you said about the Communist Party, is that right? A. That is what I said about the Communist Party, that is right." (Emphasis supplied.)

None of the above facts are stated on information and belief. The admitted facts are that the respondent judge believed the petitioner to be a Communist, a fact which well may be a part of the case against petitioner; that the judge believed Communists, of which he believed petitioner to be one, were persons hiding behind the Constitution here in seeking to reduce a bail claimed excessive in violation of the Sixth Amendment, and that they "at the same time apparently would overthrow that very document and the country that it rests upon," and that "the Communist Party was an illegal conspiracy to overthrow the government of the United States." Furthermore, the respondent judge warned the petitioner's attorney that petitioner, a Communist, was one of those "just trying to use you" and commented, "I am sorry to see you getting mixed up with these Commies. We must have another long talk."

■ Every accused person has a constitutional right to counsel and there is a correlative duty on the bar to see that every accused, no matter how unpopular, is represented competently. In addition to this sense of duty, many eminent lawyers would welcome the professional challenge involved in this case.[4]

Here the judge's bias shown is clearly personal, against the petitioner. In the cases cited in favor of the judge, it was held that the alleged bias was not a *"personal* bias or prejudice either against him [the affiant] or in favor of any adverse party" in the action, as required by Section 144 supra.

In Price v. Johnston, 9 Cir., 125 F.2d 806 at page 811, we stated: "The statute requires that the bias or prejudice be 'personal.' The allegations of the affidavit, as disclosed by the petition for the writ, do not indicate a 'personal' prejudice or bias against the accused, but charge an impersonal prejudice, and go to the judge's background and associations rather than his appraisal of the defendant personally. This is not enough under the statute, and the affidavit must be here held to have been insufficient under the law."

In Loew's, Inc., v. Cole, 9 Cir., 185 F.2d 641 at page 646, we held that the affidavit showed no more than the judge's view of the law, stating: "The [district] court held that the affidavit showed no more than the expression of a prior opinion upon a legal question, and that in failing to state any fact indicating that the judge had a personal bias or prejudice in favor of one party, or against the other, it was insufficient. With this holding we agree."

In Eisler v. United States, 83 U.S.App. D.C. 315, 170 F.2d 273, at page 278, the court stated: "Upon review of such an affidavit we do not hesitate to uphold the ruling of the court below that the affidavit should be stricken, for it does not establish bias and prejudice in the personal sense contemplated by the statute, assuming truth in all the facts stated. Prejudice, to require recusation, must be personal according to the terms of the statute, and impersonal prejudice resulting from a judge's background or experience is not, in our opinion, within the purview of the statute."

Unlike that case, in the instant case the judge, then United States Attorney, in the

---

4. Cf. This language in the address of Mr. Justice Robert H. Jackson to the annual meeting of the California State Bar in San Francisco in August, 1951.

cases cited in footnote 3 had prosecuted and secured the conviction of some of the petitioner's co-defendants for refusing to answer grand jury questions, which, in reversing, we held the record showed would tend to convict them of being Communists seeking to overthrow the government by force.

In Foster v. Medina, 2 Cir., 170 F.2d 632, the indictment was like the instant one and the affidavit claimed a remark of the judge showed personal prejudice. Of this the court said, 170 F.2d at page 634: "The court's remark so construed—and this is the only reasonable interpretation to ascribe to it in its context—does not give 'fair support' to the defendants' charge that the judge has expressed in advance of trial his view that they have in fact advocated the doctrine which the indictment charges them with having conspired to advocate." No such construction can be given to the judge's statements in the instant case.

We think these statements of fact in the affidavit, admitted to be true at the hearing, are a sufficient showing of personal prejudice against the petitioner to deprive the respondent judge of the jurisdiction to hear and determine any issue, of bail or otherwise, affecting petitioner.

The affidavit further alleges, not on information and belief, the following facts concerning Dorothy Healey, one of defendants charged to be co-conspirators in the above indictment. These facts are that:

"In 1948, the said James M. Carter occupied the office of United States Attorney for the Southern District of California. In the latter part of that year, the said James M. Carter, in his capacity as United States Attorney, initiated a Grand Jury investigation which purported to investigate the loyalty of certain government employees. In the course of the said investigation, the said James M. Carter, as United States Attorney, caused to be served a series of subpoenas upon certain witnesses including the defendants here, Dorothy Rosenblum Healey and Henry Steinberg, requiring them to appear and testify before the Grand Jury. In said proceedings the defendant Healey was served with a sub-poena duces tecum issued on the 11th day of June, 1949, entitled, 'The United States Versus Dorothy Healey,' directing the Communist Party of Los Angeles County and the Los Angeles Committee of the Communist Party to appear in the District Court herein on the fourteenth day of June, 1949, and to produce various prescribed books and records of the Communist Party of Los Angeles.

"Thereafter, in proceedings designed to secure compliance with said subpoena duces tecum the said United States Attorney James M. Carter presented a witness on behalf of the Government who testified that the said defendant Healey was the organizational secretary and the membership director of the Los Angeles County Communist Party. The said witness further testified that the defendant Healey 'is in control of the day-to-day activities of the party, the membership, its officers. If anyone wants to settle a dispute they go down to Dorothy Healey as the final arbiter. If anyone has business with the county and wants someone in an authoritative position to answer a question that they want to raise they go to see Dorothy Healey. If the question pertains to one of the functional officers of the party, such as the legislative director, she refers him to the legislative director or to one of the other functional officers of the Communist Party.' "

In this connection we notice that the several attorneys general, having charge of over 20,000 cases annually filed in the 84 district courts, in which the United States is a party and of most of which they could have no knowledge of the facts involved, upon becoming members of the Supreme Court have disqualified themselves in all Supreme Court proceedings affecting any such litigation.

The reason for such restraint has been stated by the Supreme Court in Berger v. United States, supra, where it considered the motive of Congress in enacting Section 21 of the Judicial Code, now Section 144, supra. This is stated 255 U.S. at page 35, 41 S.Ct. at page 234 to be "its solicitude * * * that the tribunals of the country shall *not only* be impartial in the contro-

versies submitted to them but shall give *assurance* that they *are* impartial, free, to use the words of the section, from any 'bias or prejudice' that might disturb the normal course of impartial judgment." (Emphasis supplied.)

It is not enough that the judge, despite his predetermination of essential facts, may put them aside and conduct a fair trial but that there also shall be such an atmosphere about the proceeding that the public will have the "assurance" of fairness and impartiality. Here we find the respondent judge, in the presence of another attorney, deprecating the action of petitioner's attorney, Marshall, an able member of the bar of this court, for defending petitioner, having the presumption of innocence of the charge which that officer of this court has devoted his proper professional services to resist.

There are several other district judges available to hear and determine petitioner's motion for reduction of bail. Here are applicable the words of the Berger opinion 255 U.S. at page 35, 41 S.Ct. at page 233: " * * * for of what concern is it to a judge to preside in a particular case; of what concern to other parties to have him so preside"? Such queries apply a fortiori in this prosecution of alleged Communists, likely to excite the widest public attention.

The petition for the permanent writ of prohibition ordering the respondent judge to take no action in any matter affecting petitioner respecting his contentions regarding bail or in connection with his prosecution under the above indictment is granted and the writ ordered issued.

BONE, Circuit Judge (dissenting).

The record before us fails to convince me that it is our duty to disqualify Judge Carter from taking any further action in the above entitled matter. My conclusion that the petition fails to show disqualifying personal bias or prejudice rests upon the reasoning in such cases as Price v. Johnston, 9 Cir., 1942, 125 F.2d 806, 811; Loew's Inc. v. Cole, 9 Cir., 1950, 185 F.2d 641, 646, and see comments of Judge Yankwich in the same case in the lower court. 76 F. Supp. page 872; Eisler v. United States,

83 U.S.App.D.C. 315, 170 F.2d 273, 278; Foster v. Medina, 2 Cir., 1948, 170 F.2d 632.

I would dismiss the petition for a writ of prohibition.