IN THE MATTER OF PATSY PILLO, CHARGED WITH CRIMINAL CONTEMPT OF COURT, AND IN THE MATTER OF JAMES CHRISTY, CHARGED WITH CRIMINAL CONTEMPT OF COURT.

Argued October 27, 1952—Decided December 8, 1952.

12

*Mr. Joseph A. Murphy* argued the cause for appellant State of New Jersey (*Mr. Theodore D. Parsons,* attorney; *Mr. Edward J. McCardell, Jr.,* on the brief).

*Mr. Joseph Tomaselli* argued the cause for respondents (*Messrs. Malandra & Tomaselli*, attorneys).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. In March 1952 a Burlington County grand jury investigating alleged corrupt protection by public officials of illicit gambling activities asked 13 questions of James Christy and 44 questions of Patsy Pillo which the witnesses, asserting the privilege against self-incrimination, refused to answer. The State brought the instant proceedings in the Law Division to secure orders directing them to answer.

After a hearing at which the State agreed not to press for an order as to six of the questions put to Pillo and Pillo agreed he would answer three others, orders were entered adjudging that Christy was not to be compelled to answer any of the questions put to him, and that Pillo was to answer only five of the 35 questions remaining at issue in his case. The State took appeals to the Appellate Division, which appeals we certified of our own motion.

█ Christy and Pillo challenge the State's right to appeal. The challenge has no merit. The orders are not adjudications upon charges of criminal contempt. Until the witness refuses to obey a court order directing him to answer there is no basis for a finding of guilt or innocence of criminal contempt. *In re Schwartz*, 134 *N. J. L.* 267 (*E. & A.* 1946). Thus there is no relevancy to their argument that only a "summary conviction and judgment" in criminal contempt is made appealable by *N. J. S.* 2*A*:10–3 and *Rule* 1:2–18*A*, and that the State's right to appeal final judgments in criminal causes under *Rule* 1:2–3, made applicable to the Appellate Division by *Rule* 4:2–6, is not to be construed to authorize appeals to the Appellate Division from the instant orders. Nor are the orders non-appealable interlocutory orders, as they contend. If the orders stand they terminate the proceedings as to the questions at issue and so are final in quality appealable to the Appellate Division

under *Rule* 4:2–1(*a*) as final judgments entered in a Trial Division. And see *In re Vince*, 2 *N. J.* 443 (1949).

The grand jury's investigation followed the publication in a newspaper, the *Florence Township Post*, of an affidavit of one George Louis Page alleging in substance that public officials had corruptly taken money and permitted gambling games and gambling places to be operated in the county. Among other places the affidavit dealt with the operation of the Maple Shade Casino, a notorious gambling place which was raided and closed in July 1949. Page testified for the State at the hearing below and gave evidence that upon his appearance before the grand jury he repeated the charges made in his affidavit and involved Christy in the operation of the Maple Shade Casino. He was unable or unwilling to say, however, whether he had also involved Pillo.

All of the questions put to Christy and all but nine put to Pillo concerned their activities before the year 1950. Many were directed specifically to the part each played in the operation of Maple Shade Casino or to the parts played by certain named persons. Of the nine questions asked Pillo which were not expressly limited to the time before 1950, seven inquired "do you know" named individuals, and the remaining two were: "Q. 33. Did you ever deliver any money for him (Fred Pillipóldi) to be delivered to Tony Marinella?" and "Q. 35. Did you ever hand any money to George Page to be delivered in connection with the operation of the Maple Shade Casino?"

The privilege against self-incrimination was developed by the common law. Historically its roots are found in the resistance of Englishmen to the so-called oath *ex officio* of the ecclesiastical courts. E. M. Morgan, *The Privilege Against Self-Incrimination*, 34 *Minn. L. Rev.* 1 (*Dec.* 1949). In modern concept its wide acceptance and broad interpretation rest on the view that compelling a person to convict himself of crime is "contrary to the principles of a free government" and "abhorrent to the instincts of an American," that while such a coercive practice "may suit the

purposes of despotic power, * * * it cannot abide the pure atmosphere of political liberty and personal freedom." *Boyd v. United States,* 116 *U. S.* 616, 632, 6 *S. Ct.* 524, 29 *L. Ed.* 746, 751 (1886). If as some think, the decision of the United States Supreme Court in *Mason v. United States,* 244 *U. S.* 362, 37 *S. Ct.* 621, 61 *L. Ed.* 1198 (1917), unduly contracted the scope of the privilege, recent decisions of that court, *Hoffman v. United States,* 341 *U. S.* 479, 71 *S. Ct.* 814, 95 *L. Ed.* 1118 (1951), *Brunner v. United States,* 343 *U. S.* 918, 72 *S. Ct.* 674, 96 *L. Ed.* —— (1952), *Greenberg v. United States,* 343 *U. S.* 918, 72 *S. Ct.* 674, 96 *L. Ed.* —— (1952), have been criticized as representing extreme and over generous interpretation and application of it. Falknor, Self-Crimination Privilege: Links in the Chain, 5 *Vanderbilt L. Rev.* 479 (April 1952).

■■ The federal decisions interpret and apply the privilege as incorporated in the Fifth Amendment to the Federal Constitution. That amendment does not apply to the several states. *In re Vince, supra.* Indeed, since the decision in *United States v. Murdock,* 284 *U. S.* 141, 52 *S. Ct.* 63, 76 *L. Ed.* 210 (1931), in which the Supreme Court refused to extend the Fifth Amendment privilege to a witness who might face state prosecution on matters incidentally revealed by a federal inquiry, it has generally been considered settled that the privilege against self-incrimination does not extend to protect the witness as to matters that may tend to incriminate him under the laws of another jurisdiction. *Annotation,* 82 *A. L. R.* 1380, supplementing 59 *A. L. R.* 895; 8 *Wigmore, Evidence* (3d ed. 1940), sec. 2258, p. 337; but see *United States v. DiCarlo,* 102 *F. Supp.* 597 (*D. C. N. D. Ohio E. D.* 1952), and *Note* 66 *Harv. L. Rev.* 186 (*Nov.* 1952).

The privilege is statutory in this State and does not rest upon a constitutional provision. Under *N. J. S.* 2A:81–4 a witness is not ordinarily to be excused from answering any questions relevant and material to the issue. An exception is that made by *N. J. S.* 2A:81–5 declaratory of the common law providing that no witness "shall be compelled

to answer any question if the answer will expose him to a criminal prosecution or penalty or to a forfeiture of his estate."

Christy and Pillo argue that apart from their insistence that all of the questions at issue are privileged, they were not proper because not relevant and material to the grand jury's inquiry. The trial judge found to the contrary, and, we think, properly. It is the State's theory that public officials who corruptly failed for two years after July 1949 to cause to be prosecuted persons subject to prosecution for their parts in the operation of Maple Shade Casino are subject to indictment at any time until July 1953, that is, within the two-year period after the expiration of the time during which those responsible for the conduct of the Casino could have been criminally prosecuted. The questions asked both witnesses might readily produce answers bearing upon the actions of public officials or at least open up other avenues of inquiry in that regard. The test of relevancy and materiality in such an inquiry does not depend upon the probative value of the answer sought to establish the truth or falsity of the charge being investigated, but whether the fact to be learned from the answer to the question is so related to the subject matter of the inquiry that the facts could reasonably be said to be relevant and material to the issue. Moreover, in view of the nature of the inquiry, questions of doubtful materiality and relevancy are properly to be resolved in favor of the grand jury, at least when, as here, the complete absence of any connection of the questions to the subject matter is not made to appear.

Plainly there was no basis on the ground of privilege for excusing Christy and Pillo from answering the questions related to transactions and events which had transpired more than two years prior to the days in March 1952 when they were interrogated. The two year statute of limitations, N. J. S. 2A:159–2, barred any prosecution of them based on criminal facts disclosed by their answers. The privilege, by unanimous authority, does not protect against

disclosure of facts in respect of which prosecution is barred by lapse of time. In practical effect the lapse of time works an expurgation of the crime and the reason upon which the privilege is based does not exist. *Wigmore, supra, sec. 2279, p.* 460. True, *N. J. S. 2A*:159–2 expressly provides that "This section shall not apply to any person fleeing from justice." There was testimony below, however, that Christy lived on Cedar Lane, Florence, "continuously during the last eight years" prior to 1952 which sufficed to support the inference that he was not a fugitive from justice during the statutory period. While there was no similar proof as to Pillo's whereabouts during the period, there was nothing whatever in the record to indicate that he had fled the State, and, for reasons hereafter adverted to, he is not to be heard to contend that the statute was not available to him without some proof on his part tending to show at least that he was absent from the State. Moreover, Pillo pleaded *non vult* on January 19, 1950 to an indictment for keeping a gambling resort in Maple Shade and was fined $5,000. This indictment apparently grew out of his connection with the operation of the Maple Shade Casino, in which case, his conviction rendered him invulnerable to further prosecution in that regard and the privilege no longer extends to protect him from disclosure of facts concerning his part in it. *Wigmore, supra, sec.* 2279, *p.* 460; 58 *Am. Jur., Witnesses, sec.* 84, *p.* 72.

The "do you know" and "did you ever" "deliver" or "hand" any money questions asked of Pillo, not being limited to any particular period of time, raise other considerations. Upon its face, each is innocent. However, the privilege protects from disclosure not alone answers which, unconnected with other testimony, suffice to convict the witness of a crime. The proper test was laid down by Chief Justice Marshall almost a century and a half ago. Testimony disclosing any "link" in the "chain which is necessary to convict," "a fact that would form a necessary and essential part of a crime which is punishable by the laws," cannot be

compelled. *United States v. Burr* (*In re Willie*), *Fed. Cas.*, page 38, *No.* 14, 692e; 1 *Robertson, Trial of Aaron Burr,* 244 (1807). Judge Learned Hand puts it: "All crimes are composed of definite elements, and nobody supposes that the privilege is confined to answers which directly admit one of these; it covers also such as logically, though mediately, lead to any of them; such as are rungs of the rational ladder by which they may be reached." *United States v. Weisman,* 111 *F. 2d* 260, 262 (*C. C. A.* 2, 1940). It will not do, however, to permit a witness to escape his obligations to provide his testimony for the State upon extremely remote and speculative possibilities of danger. We should interpret the privilege liberally in light of its wholesome service to the cause of personal freedom, but "to interpret and apply the privilege without regard to the public interest and without striving to accommodate that interest, as far as may be done without violence to the privilege, would be unrealistic and doctrinaire." *Falknor, supra.*

 Basically the problem for the trial court is how properly to afford full protection to the witness and at the same time prevent simulated excuses. The trial judge is not to accept the witness's mere statement that the answer will tend to incriminate him. It is for the court to say whether his silence is justified. *Aaron Burr's Case, supra.* The test for the judge, "governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence," *Hoffman v. United States,* 341 *U. S.* 479, 487, 95 *L. Ed.* 1118, 1124 (1951), is whether from all the circumstances appearing, that is, the setting in which the question is asked, "there is reasonable ground to apprehend danger to the witness from his being compelled to answer; * * * the danger to be apprehended must be real and appreciable, with reference to the ordinary operation of law in the ordinary course of things; not a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable

that no reasonable man would suffer it to influence his conduct." *R. v. Boyes*, 1 *B. & S.* 311, 321 (1861).

The solution here was not aided by any evidence by Pillo or on his behalf to explain the basis for his fear of self-incrimination. True, when the circumstances are such that reasonable apprehension on the part of the witness is evident to the court, the validity of his claim of privilege must be recognized, *Hoffman v. United States, supra*; he is not at his peril called upon to disclose in that circumstance the apprehended danger underlying his claim. Even when in certain circumstances a witness risks a judgment adverse to his claim of privilege unless he explains why an answer to an apparently innocent question might tend to incriminate him, "obviously a witness may not be compelled to do more than show that the answer is likely to be dangerous to him, else he will be forced to disclose those very facts which the privilege protects. Logically, indeed, he is boxed in a paradox, for he must prove the criminatory character of what it is his privilege to suppress just because it is criminatory. The only practicable solution is to be content with the door's being set a little ajar, and while at times this no doubt partially destroys the privilege, and at times it permits the suppression of competent evidence, nothing better is available." *United States v. Weisman, supra*, 111 *F. 2d* at *page* 262; see *United States v. Rosen*, 174 *F. 2d* 187 (*C. C. A.* 2, 1949), *certiorari* denied 338 *U. S.* 851, 70 *S. Ct.* 87, 94 *L. Ed.* 521 (1949).

Considering first the "do you know" questions, we are of the opinion that the trial judge upon this record, and without any explanation from Pillo, was not justified in determining that the danger was reasonably evident that if Pillo was compelled to answer "Yes" or "No" to those questions, he would thereby tend to or would in fact incriminate himself. Several federal decisions have extended the privilege to this type of question on the view that in the setting in which the question was asked the witness could be forced thereby to supply "clues" or "sources" from which crimi-

nating evidence "might be obtained." *Alexander v. United States*, 181 *F*. 2d 480 (*C. C. A.* 9, 1950); *Doran v. United States*, 181 *F*. 2d 489 (*C. C. A.* 9, 1950); *Kasinovitz v. United States*, 181 *F*. 2d 632 (*C. C. A.* 9, 1950), certiorari denied 340 *U. S.* 920, 71 *S. Ct.* 356, 95 *L. Ed.* 664 (1951); *Healey v. United States*, 186 *F*. 2d 164 (*C. C. A.* 9, 1950); *United States v. Raley*, 96 *F. Supp.* 495 (*D. C. D. C.* 1951). It seems to us highly speculative and remote in this setting, however, to conclude that a question which calls for information as to mere acquaintance with a person identified in the question can necessarily turn up a source of evidence to be used against the witness when nothing whatever intimates or suggests any connection of the acquaintance or lack of acquaintance of Pillo with the named persons with the alleged corruption of public officers under inquiry. We are unable to detect the slightest scent of danger to Pillo behind these questions. There is nothing from which reasonably to infer a danger "real and appreciable, with reference to the ordinary operation of law in the ordinary course of things." *O'Connell v. United States*, 40 *F*. 2d 201, (*C. C. A.* 2, 1930), appeal dismissed 296 *U. S.* 667, 51 *S. Ct.* 658, 75 *L. Ed.* 1472 (1930); *United States v. Flegenheimer*, 82 *F*. 2d 751 (*C. C. A.* 2, 1936). Pillo's counsel on the oral argument could suggest only the possibility of some vaguely defined federal offenses, but in light of the nature of the grand jury's inquiry such possibility is not a basis for the assertion of the privilege. *Marcello v. United States*, 196 *F*. 2d 437, 443 (*C. C. A.* 5, 1952), relied upon by Pillo, turns on implications of criminality of the witness with the person named in the question in the setting in which the question was asked, a situation not made apparent by this record. The person named was under indictment for murder, a state offense. Marcello was held privileged not to disclose to a Congressional committee whether he knew him because the court viewed the surrounding circumstances as implying that Marcello "might be confronted with a charge of causing Vitelli to travel in interstate

or foreign commerce with intent to avoid prosecution, or custody, or confinement after conviction, or of pursuing a like course with reference to himself, or to some other witness in the murder case." Nothing similar appears as to the persons named in the questions here. Pillo chose to keep the door tightly closed and to deny the court the smallest glimpse of the danger he apprehended. He cannot then complain that we see none.

Questions 33 and 35, however, as phrased, do reasonably imply a basis for a real and appreciable apprehension of danger to Pillo if he is to be compelled to answer them. The grand jury's basic inquiry is whether public officials corruptly accepted moneys not to prosecute violations of the gambling laws. The State's theory is that even as to the Maple Shade Casino operation officials who, from evil motives, refrained to prosecute those responsible for that operation within two years after its 1949 closing date, that is, until July 1951, are themselves subject to indictment until July 1953. Thus Pillo at the time of his appearance before the grand jury in March 1952 was exposed to the danger of prosecution growing out of any part he may have played in payments, if any, to public officials between March 1950 and July 1951, made to forestall prosecution of the operators of the Casino while such prosecution was still possible. The questions as phrased, not limited as to the period of time in view, are thus within the cover of the privilege.

The order as to Christy is reversed with direction to enter an order directing him to answer all thirteen questions.

The order as to Pillo is modified with direction to enter an order directing him to answer all 35 questions in issue except questions 33 and 35.

*For reversal*—Chief Justice VANDERBILT, and Justices OLIPHANT, BURLING, JACOBS and BRENNAN—5.

*For affirmance*—Justice WACHENFELD—1.