## VOLTMANN et al. v. UNITED FRUIT CO.
### No. 165.

Circuit Court of Appeals, Second Circuit.

Feb. 5, 1945.

---

William A. Hyman, of New York City (William A. Hyman and Harold W. Hayman, both of New York City, on the brief), for plaintiffs-appellants.

Burlingham, Veeder, Clark & Hupper, of New York City (Ray Rood Allen, C. B. M. O'Kelley, and Herbert M. Lord, all of New York City, of counsel), for defendant-appellee.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

With the exception of Mr. Voltmann, the plaintiffs were passengers on a cruise from New York to Central American ports and return, on the defendant's S.S. Quirigua, when at about 8:36 on the evening of January 11, 1941, the ship rolled so heavily in a storm that they were injured. All the passengers but Mr. Shulman, who was not hurt, sued in the District Court for the Southern District of New York to recover their damages for personal injuries and expenses alleged to have been caused by the negligence of the defendant. Mr. Voltmann sued for loss of consortium and for medical expenses he incurred in behalf of his wife, Evelyn C. Voltmann. Mr. Shulman sued to recover for his medical expenses on account of his wife, Bertha M. Shulman. After a trial by jury lasting twelve days, a verdict was returned for the defendant and judgment was entered thereon. All the plaintiffs have appealed.

Mrs. Voltmann was hurt when a divan on which she was sitting in the lounge became loose because hooks with which it was attached to the aft bulkhead were lifted from their eyes during a roll of the vessel and the divan slid across the lounge with her and struck against the port bulkhead. Mrs. Shulman was sitting in the smoking room on a divan which was attached to the deck some feet from any bulk-

CLARK, Circuit Judge, dissenting.

head by an angle iron on each of its six legs. The same roll of the ship caused the divan to tip over backwards and throw her to the deck, where she was hit by a sliding metal table during a subsequent roll. Mr. Levine had just arisen from a similar divan when the ship took the roll which broke loose the divan previously mentioned, and he was thrown about in such a way that his neck was injured.

The claimed negligence of the defendant was its failure to fasten the furniture properly, its allowing passengers to use the public rooms during a severe storm, and faulty navigation of the ship during the prevailing weather conditions. The appellants rely for reversal of the judgment on errors said to have been committed in the granting of the defendant's motion to amend its answer on the second day of the trial, the failure of the judge to grant plaintiffs' motion made on the ninth day of the trial to disqualify himself and declare a mistrial because his son-in-law was a member of the firm of attorneys representing the defendant in the action, the refusal to admit a weather map in evidence after both sides had rested, the granting of certain of the defendant's requests to charge, the refusal of requests to charge in behalf of the plaintiffs, rulings adverse to the plaintiffs on the reception and rejection of evidence, and the general conduct of the trial in a manner prejudicial to the appellants.

■ Most of these contentions are unsound and many of them do not even require discussion. The amendment to the answer modified an admission that "there was a severe storm, the seas were heavy, and the said steamship pitched, tossed and rolled" to an admission that "the seas were heavy and the steamship rolled." It cannot be gainsaid that this puts a heavier burden upon the plaintiffs than they had been expecting to meet. The severity of the storm was a factor bearing directly upon the precautions the defendant was bound to take to protect its passengers on this voyage at the time they were hurt. But while the admission that the storm was severe and the steamship pitched and tossed was a benefit to the plaintiffs, to deprive them of it was not error provided they had an adequate opportunity to present their proof on the subject. They were given such an opportunity and, as the trial lasted for about ten days after the amendment was allowed, we cannot say that this was inadequate, especially in view of the fact that no motion was made for an adjournment to enable the plaintiffs to procure further evidence. It is true that the appellants' attorney protested when the amendment was allowed, but there was ample reason for overriding his protests in the circumstances. It was urged in support of the motion that the admission was inadvertently made and it was reasonable for the judge to believe that as he evidently did. The amendment was well within the letter and spirit of Rule 15(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and if the plaintiffs were really surprised and put to some disadvantage greater than the expenditure of time and effort to get additional procurable evidence at that time their attorney should have requested a postponement of the trial in order to prepare his case properly.

■ Without moving for an adjournment the attorney proceeded with his case and was not altogether successful in making proper proof of weather conditions. A weather map was offered in evidence by him on the last day of the trial after both sides had rested. It was a complicated map obtained from the United States Weather Bureau showing weather conditions over a large area roughly outlined by the north pole, the north Pacific, the region in which the ship was traveling, and east into the Mediterranean to beyond Sicily. The numerous curved lines and numbers upon it were obviously confusing to one not qualified to read such a map. The plaintiffs offered the map without explanation and it was excluded after objection had been made, the defendant's attorney declaring that "I have examined the map, and I cannot understand it and I submit without explanation it should not be admitted." The judge took the same view and we think he was well within the exercise of sound discretion in so doing. Such technical drawings should be properly explained to a jury. Otherwise it is idle to expect that what proof of actual facts may lurk amid the profusion of curves and signs and figures covering a weather map of a large area of the globe will be given due effect by members of the jury. Indeed, it would be more reasonable to expect that the jury would misread the map and would draw erroneous conclusions from it. Here too, had the plaintiffs been unable to procure a witness immediately to explain the map there

should have been a request for time so to do. In the absence of such a motion, the refusal to permit its introduction after both sides had rested the day before was an exercise of sound discretion. Moreover, the plaintiffs had produced other evidence as to the severity of the storm and this map was but cumulative.

■ The motion that the judge disqualify himself and declare a mistrial on account of his relationship to a member of the firm of attorneys representing the defendant in the suit was made as soon as the plaintiffs' attorney learned that a son-in-law of the judge was a member of that firm. The trial had been in progress for about nine days and apparently the judge had given the matter no thought previously. There was no intimation that his son-in-law had had anything to do with the case personally or even knew that such an action had been brought. He did, of course, have an interest in the earnings of the firm of which he was a member, but there was nothing to indicate that the fees of his firm were contingent or that the outcome of this trial would make any difference to him financially. No doubt the judge would have declined to sit in the case had he been aware at the outset that there would be any objection to his sitting, and his refusal to sit in cases in which this firm was interested would make assurance doubly sure that no one would feel, however lacking in factual basis the feeling might be, that he could not be perfectly impartial.

The applicable statute is § 20 of the Judicial Code, 28 U.S.C.A. § 24. It provides that whenever the judge of a district court "is in any way concerned in interest in any suit pending therein, or has been of counsel or is a material witness for either party, or is so related to or connected with either party as to render it improper, in his opinion, for him to sit on the trial, it shall be his duty, on application by either party, to cause the fact to be entered on the records of the court;" and then he shall order an authenticated copy thereof to be certified to the senior circuit judge then present in the circuit who shall designate another judge in accordance with the applicable statutory provisions to act in the place of the judge so disqualified. The judge was not in any way concerned in interest in the suit. Relationship to an attorney whose firm was interested was the sole ground of the motion and that is not mentioned in the statute. The nearest approach to its

inclusion is found in the words "or is so * * * connected with either party as to render it improper, in his opinion, for him to sit on the trial * * *." Assuming, without deciding, that a connection within the terms of the statute was shown to exist, the judge was plainly empowered to decide whether "in his opinion" it was such a connection with one of the parties as would make it improper for him to sit. The statute makes the exercise of sound judicial discretion by the judge the test in such circumstances, and if his decision is not shown to have been arbitrary or capricious there is no abuse of discretion calling for reversal. We think that there was no abuse in this instance. It was late in the trial when the matter was presented for consideration, and though the plaintiffs were in no way responsible for that fact it was a circumstance to be considered in fairness to all concerned.

The avoidance of delay or expense or inconvenience should not, of course, be made an excuse for denying a well founded motion of this kind at any stage of the trial, but where the judge's connection with a party is so remote and the basis of the motion so tenuous as it was in this instance an over-all appraisal of all the attendant circumstances may well justify a denial. We think that such was the situation in this instance and that the fault now found by the plaintiffs with the judge's conduct of the trial, especially in respect to the examination of witnesses and the admission and exclusion of evidence, is hardly more than an attempt to bolster the disqualification motion and that it amounts but to an overemphasis of the trivial.

■ Granting one of the defendant's requests to charge, however, is not in this category. The principal issue was whether in view of what knowledge of the storm and of prevailing weather conditions the master of the ship was shown to have had he took the requisite precautions for the safety of his passengers. The defendant's evidence was to the effect that though the ship was in the area of a storm the roll which caused the damage was not to be foreseen because it was due to a "freak sea" in which were found "confused swells." The plaintiffs contended that the conditions encountered which caused the furniture to break loose were to be expected in view of the weather reports received by the ship and that they were injured because the master negligently failed to navi-

gate accordingly and otherwise to use due care for their safety. It was the duty of the master to protect his passengers from harm with the care, skill and prudence which an "exceedingly competent and cautious man would bring to the task in like circumstances." Moore v. American Scantic Line, 2 Cir., 121 F.2d 767, 768. However, having early in the charge told the jury just that, the judge shortly before submitting the case complied, over the objection of plaintiffs' attorney, with a request of the defendant and charged the jury as follows: "You may not find that the master of the Quirigua was negligent as to the manner in which the ship was navigated at the time of the occurrence causing plaintiffs' injuries, if you find that he fairly exercised his judgment and skill in shaping the vessel's course and speed according to the conditions of wind and sea as he observed them at that time, and in accordance with the storm warnings he received on the ship." This was a binding instruction in absolute terms which forbade the jury to find that the ship was negligently navigated, provided the master fairly exercise, not necessarily the judgment and skill of an exceedingly competent and cautious master in like circumstances, but his own judgment and skill, whatever they may have been. That amounted to telling the jury both that the ship was not negligently navigated if the master acted as he thought best under the circumstances and that the skill and judgment of this master, if fairly exercised, was at least the equivalent of that degree of skill, care and prudence by which under the law his navigation was to be tested. However poorly equipped a jury may be to do so it not only must determine in respect to navigation whether or not the master was attentive to his duties and exercised his skill and best judgment under any given circumstances but it must in addition be satisfied that the master exercised a very high degree of care and skill in so doing. Maibrunn v. Hamburg-American S.S. Co., 2 Cir., 77 F.2d 304; The Thessaloniki, 2 Cir., 267 F. 67, certiorari denied 254 U.S. 649, 41 S.Ct. 63, 65 L.Ed. 457; Pennsylvania Co. v. Roy, 102 U.S. 451, 26 L.Ed. 141; Kvart v. Swedish American Line, 2 Cir., 126 F.2d 279. It was error to leave that out of account at the end of the charge. The instruction did with apparent effectiveness reduce the high degree of care a carrier must at all times exercise for the safety of its passengers to that which a generally competent master may fairly see fit to exercise regardless of whether that happens to be of a high degree at the time or otherwise. While as a practical matter the defendant could discharge its duty to its passengers in respect to navigation only by employing a competent master and letting him use his skill and careful judgment its liability to passengers who are injured by negligent navigation is not thereby discharged. The law takes into account the well known fact that all human beings make mistakes and even a competent master may at times be negligent. The care, skill and judgment which he is bound to exercise are to be tested by the standard the law establishes and not solely by that which the very master accused of negligent navigation has deliberately set by and for himself.

Judgment reversed and cause remanded.

CLARK, Circuit Judge (dissenting).

The views of negligence stated in the opinion were, it seems to me, those the jury must have understood as controlling its deliberations. In the most prominent place in its careful and lengthy charge—at the very opening—the court stated clearly and forcefully the appropriate objective standard by which the master's navigation should be tested. Again in the middle of the charge the court dealt rather extensively with the questions to be raised and answered as to the master's conduct, showing decisively that it could not be his own subjective views of proper navigation which should govern. Finally at the end of the charge and when the inevitable colloquy with counsel as to their requests to charge began, the court reiterated this objective standard both in granting some of plaintiffs' requests and in stating that it had covered others in its general charge. The incident relied on here for reversal came still later in that colloquy, which doubtless failed even to hold the jury's attention, since the judge passed upon a total of 31 requests—10 for plaintiffs, and 21 for defendant. The one in question was the 27th considered; the judge simply read it, plaintiffs' counsel merely said, "I respectfully except," repeating the formula he had already employed extensively, and then they passed on to the remaining four requests.

Now the only objection to the request—in itself appropriate and necessary to emphasize the importance of testing the navi-

gation in the light of conditions known or observed *at the time of the accident,* the evidence having shown the crest of the storm to be then already past—is the use of the word "his" before "judgment and skill." But that, I think, cannot be held erroneous, but only ambiguous, with the ambiguity cleared up by the positive statements of the general charge. It is not erroneous, textually considered, because it is the master's judgment which is in issue; error appears only when we add the gloss of interpreting "his" to include a subjective standard of negligence, not the objective standard previously defined. The judge, with his attention naturally focused upon the more important thought contained in the request as to *time* of applying the test, probably believed—as did the jury if it caught the point at all—that he was only saying in effect "his proper judgment according to the standard I have previously defined." Note that had the statement as given followed immediately after his original definition, we must surely have so interpreted it and would not have been conscious of any inconsistency. It seems clear, too, that no one was at the time; had the matter been even mentioned, it would have been cleared up in an instant. And now plaintiffs are not entitled to assign it as error, since counsel failed to state "distinctly the matter to which he objects and the grounds of his objection." Federal Rules of Civil Procedure, rule 51, 28 U.S.C.A. following section 723c.

This case was tried for twelve days over a period of 2-1/2 weeks, concluding with a verdict justified on the evidence. It was contested with bitterness, making the judge's task far from easy; and we seem agreed, after a scrupulous scrutiny,[1] that for the most part it was well conducted. This now all goes for naught because the judge inadvertently and inconspicuously used the wrong word—"his," instead of "proper"—but with a connotation hardly to be misunderstood under all the circumstances. I would follow the admonition of Federal Rules of Civil Procedure, rule 61, repeating 28 U.S.C.A. § 391 in substance, that a verdict is not to be set aside "unless refusal to take such action appears to the court inconsistent with substantial justice."

---

[1] For my part I fear we overdignify the objection to the amendment of the answer by the attention we give it; the issue was so naturally, if not inevitably, a part of the case that no different course in the presentation of evidence was required or had, and there was obviously no basis even for a request for a continuance.