William J. GREEN, Jr., Petitioner,

v.

Honorable John W. MURPHY, Respondent,

United States of America, Intervenor.

No. 12616.

United States Court of Appeals Third Circuit.

Argued July 7, 1958.

Decided Sept. 25, 1958.

David N. Savitt, Philadelphia, Pa., for petitioner.

Frank J. Kiernan, Washington, D. C., for respondent.

Before BIGGS, Chief Judge, and MARIS, GOODRICH, McLAUGHLIN, KALODNER, STALEY, and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

A petition for a writ of mandamus or prohibition was filed by the petitioner, William J. Green, Jr., against the Honorable John W. Murphy, Chief Judge of the United States District Court for the Middle District of Pennsylvania, as respondent, praying this court to order Judge Murphy to proceed no further with the criminal case of the United States of America v. Green (the petitioner), and others, in the United States District Court for the Middle District of Pennsylvania, at Criminal Docket No. 12,880. The petition is based on the refusal of Judge Murphy to disqualify himself because of the allegations of an affidavit filed by the petitioner purportedly pursuant to the provisions of Section 144, Title 28, U.S.C.[1] The petition prays also that another judge be assigned to hear the criminal case, asserting that Judge Murphy "has a personal bias and prejudice against * * * [the petitioner, Green]". We issued a rule to show cause directed to Judge Murphy. He answered and the United States, intervening, also responded. After certain preliminary proceedings in this court which need not be

---

[1]. Section 144 provides: *"Bias or prejudice of judge.* Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

"The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith."

recited here, the case came on for hearing. Because of the importance of the questions of law involved and to effect an expeditious disposition of the issues, the case was heard by the court en banc.

Certain facts must be stated. On March 29, 1957, motions to dismiss the indictment, for a bill of particulars, for severance, for a transfer of the trial from Scranton to some other place of holding court within the Middle District of Pennsylvania, and for inspection of certain records within the possession of the United States were filed by the petitioner, Green. These were passed upon by Judge Murphy, who denied all of them save the motion for inspection, the latter being agreed to by the United States Attorney. Thereafter, on March 2, 1958, on inquiry by the petitioner's counsel of Judge Murphy, as to at what term of court and by what judge[2] the petitioner would be tried, petitioner's counsel was informed that the petitioner "most probably" would be tried by a court over which Judge Murphy would preside at Scranton. On March 7, 1958, the petitioner filed a motion seeking to have Judge Murphy replaced as the presiding judge at the trial by some other judge and an affidavit of bias and prejudice was filed in the court below pursuant to Section 144, Title 28 U.S.C. Note 1, supra. The affidavit alleged, inter alia, that the petitioner believed Judge Murphy was personally "prejudiced against me by reason of our long continued and close political and social relationship and that by reason of his desire to prove his integrity and lack of favoritism, he will be unable to afford me a fair and impartial trial * * * ". We will not state the contents of the affidavit in this opinion for we do not find it necessary now to reach the question of the legal sufficiency of its allegations as the basis for disqualification. Judge Murphy concluded that the allegations of the affidavit were insufficient and refused to disqualify himself, stating his reasons in an opinion filed concurrently with an appropriate order.

We are of the opinion that the case at bar is ruled by legal principles which, although they may have been cloudy in the past, are now clearly defined. It is now settled law that the judge against whom an affidavit of bias and prejudice is filed under Section 144, must himself pass on the legal sufficiency of the facts alleged and that in so doing he must accept the allegations of the affidavit as true. A United States district judge therefore possesses the jurisdiction, the power, to pass upon the question as to whether he must withdraw from the case by reason of the allegations of his disqualification contained in the affidavit. This necessarily includes the power to decide the question wrongly as well as rightly. Behr v. Mine Safety Appliances Co., 3 Cir., 233 F.2d 371, certiorari denied 1956, 352 U.S. 942, 77 S.Ct. 264, 1 L.Ed.2d 237, rehearing denied 1957, 352 U.S. 976, 77 S.Ct. 353, 1 L.Ed.2d 329; In re Greene, 3 Cir., 1947, 160 F.2d 517, 518; Voltmann v. United Fruit Co., 2 Cir., 1945, 147 F.2d 514, 517. Only what is set forth in the affidavit of bias and prejudice is material to the issue of disqualification. Berger v. United States, 1920, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481. It follows, therefore, that only questions of law are presented by the respondent judge's refusal to disqualify himself. There can be no dispute either in the district court or on appeal as to the truth or falsity of the allegations of the affidavit. This does not mean, however, that the legal sufficiency of what is alleged in the affidavit becomes moot on appeal for what is stated therein and the inferences, if any, which may be drawn properly therefrom constitute the very basis on which the issue of disqualification of the judge must be decided ultimately. See Korer v. Hoffman, 7 Cir., 1954, 212 F.2d 211, 212–213,

---

2. There are presently two Judges in regular active service in the Middle District of Pennsylvania, and one Judge presently retired pursuant to Section 371(b), Title 28 U.S.C.

45 A.L.R.2d 930, and the authorities cited therein.[3]

■ An adjudication by the judge against whom the affidavit is filed that its allegations are legally insufficient is not a final appealable decision under Section 1291, Title 28 U.S.C., at the stage of the proceedings presently reached at Criminal Docket No. 12,880, in the court below. Nor does such a decision fall within the provisions of Section 1292, Title 28 U.S.C., which gives jurisdiction to the courts of appeals to hear and determine certain interlocutory decisions. Judge Murphy's present decision is subject to review only when and if the petitioner is convicted and sentenced. It will then become appealable to this court. What we wish to make very plain is that a remedy is afforded the petitioner by way of appeal. Korer v. Hoffman, supra; Hurd v. Letts, 1945, 80 U.S.App.D.C. 233, 152 F.2d 121; Dilling v. United States, 1944, 79 U.S.App.D.C. 47, 142 F.2d 473; Minnesota & Ontario Paper Co. v. Molyneaux, 8 Cir., 1934, 70 F.2d 545. We think that the remedy which can be afforded the petitioner by appeal is adequate for this court can strike down a judgment of conviction if we should find that the affidavit filed by the petitioner was legally sufficient to disqualify Judge Murphy under the provisions of Section 144.

■ A writ of mandamus or prohibition may be issued only in aid of this court's appellate jurisdiction. See the "All Writs Statute", 28 U.S.C.

Section 1651. Korer v. Hoffman, supra. Cf. Berger v. United States, 1951, 255 U.S. 22, 36, 41 S.Ct. 230, 65 L.Ed. 481.[4] Mandamus or prohibition are extraordinary remedies and can be employed justifiably only when rare and exceptional circumstances are present.

The fact is that the petitioner will be put to the expense and trouble of a trial because Congress has provided for the review of a district judge's determination of the kind here complained of and under the circumstances here present, only on the review of a final judgment of conviction. It is not as if, as was said in Roche v. Evaporated Milk Ass'n, 1943, 319 U.S. 21, 31, 63 S.Ct. 938, 944, 87 L.Ed. 1185, the writ is sought for relief "from an abuse of judicial power, or refusal to exercise it." It is the function of mandamus to correct such errors. We find no circumstances here which would justify our issuing the writ. Ex parte Fahey, 1947, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041. We conclude that the prayers of the petition must be denied.

In so holding we desire to make it plain that we are not passing presently on the sufficiency of the allegations of the affidavit of bias and prejudice. We state only that the circumstances are not such as to convince us that we, in the light of our legal discretion, should exercise our power to issue a writ of mandamus or prohibition.

An order will be entered denying the prayers of the petition.

3. Compare the provisions of Section 455, Title 28 U.S.C. with those in Section 144, Title 28 U.S.C., now *sub judice.*

4. The petitioner relies strongly on the Berger decision. We think that he does so under a misapprehension as to the nature of the Supreme Court's ruling. The Court there was directing its attention to the issue of whether the judge against whom the affidavit was filed was entitled to pass on the truth of the allegations of the affidavit. The Berger case actually reached the Court after the trial and conviction of the accused. The Court in effect stated that if the truth

or falsity of the allegations of the affidavit were to be passed on by the judge himself, the remedy afforded the defendant by an appeal would *then* be inadequate. Cf. Connelly v. United States District Court, 9 Cir., 1951, 191 F.2d 692 and footnote 1 cited to the text at page 693.

We think it clear that in the Connelly case the Court of Appeals for the Ninth Circuit misapprehended the tenor of the Supreme Court in Berger. See the concurring opinion of Judge Pope in Gladstein v. McLaughlin, 9 Cir., 1955, 230 F. 2d 762, 764.

HASTIE, Circuit Judge, with whom STALEY, Circuit Judge, joins (concurring).

Judge STALEY and I concur because we think the denial of the present petition is a correct result. At the same time, the refusal of the majority to reach a final decision at this time on the important issue this petition raises seems to us to be a mistake.

We understand the majority opinion to say that in extraordinary enough circumstances it might be proper for this court to use mandamus or prohibition to prevent a district judge from arbitrarily or scandalously disregarding his plain duty to disqualify himself from hearing a case under Section 144 of Title 28 of the United States Code, but that such circumstances do not appear in this case. Accordingly, relief is denied at this time in this special proceeding. However, the majority choose to leave open the question whether the trial judge's action was wrong enough to require on future appeal a reversal of any conviction that may now ensue. It is this postponement of ultimate decision on the charge of disqualification with which we disagree.

The very special, challenging and often sensational charge of partiality in the administration of justice which is initiated by a formal affidavit of prejudice against a judge should receive final adjudication at first opportunity, if only in the interest of public confidence in the courts. Moreover, a trial is not likely to proceed in a very satisfactory way if an unsettled claim of judicial bias is an ever present source of tension and irritation. Only a final ruling on the matter by a disinterested higher court before trial can dispel this unwholesome aura. Thus, if an appellate court refuses, when properly petitioned, to prevent a disqualified judge from trying a case, or to say that the challenged judge is not disqualified, this postponement of decision hurts the administration of justice, even though the court reserves the right to pass upon the matter after trial. Such considerations far outweigh the objections to piecemeal appeals which ordinarily militate against deciding on mandamus an issue which can be reviewed after trial. Another normal objection to mandamus, its character as a challenge addressed to the judge himself, has no force here because the affidavit of prejudice has already challenged the judge in the most personal way imaginable.

For these reasons, we would decide now whether the affidavit of prejudice in this case is sufficient to disqualify Judge Murphy. In our view it is plainly insufficient. Under the statute a sufficient affidavit must charge that the judge "has a personal bias or prejudice against" the party seeking his disqualification. We think Congress used "bias or prejudice" in the conventional sense of enmity or hostility. Here the very opposite is charged. The accused avers that there is a history of friendship and a sense of community between himself and the judge, as well as some sense of obligation running from the judge to him. The sole complaint is that the judge may overcompensate for his inclination toward the accused by leaning backward. The teachings of psychology are invoked to show that this danger exists. But we simply are not persuaded that such possible psychological overcompensation for an inclination favorable to a party is the "personal bias or prejudice against him" with reference to which Congress has legislated. Therefore, we would sustain on its merits Judge Murphy's ruling that no such affidavit as Section 144 requires has been filed against him.

This does not mean that the trial judge cannot or should not in all of the circumstances of this case, including the understandable indignation and irritation disclosed by his opinion on the question of disqualification, consider whether, however free of bias he may feel, the also important appearance of complete impartiality in the administration of justice would not best be maintained by his stepping aside. Judges from time to time elect not to try cases, which they are sure they can try fairly and objec-

tively, because of their concern to avoid any substantial doubt which circumstances beyond their control may create in the public mind about the impartiality of their administration of justice in the matters at hand. But this consideration must be left to the discretion and sensitive perception of each trial judge in the circumstances of each case. It cannot effectively be controlled by appellate rulings. Certainly it does not involve any mandatory disqualification under Section 144.

KALODNER, Circuit Judge (dissenting).

I would grant forthwith the writ directing Judge Murphy's withdrawal from participation in the Green case.

A judge should not preside at the criminal trial of one (1) whose sponsorship he sought and received in obtaining his judicial appointment and confirmation;[1] (2) whose aid he importuned to procure a lucrative State office for a lifetime friend;[2] (3) with whom he had enjoyed a close personal and political relationship beginning with their service as members of Congress;[3] and (4) whose co-defendant (Herbert W. McGlinchey) is allegedly an intimate friend of the judge who gave material assistance in obtaining his judicial appointment, and as to whom the judge is alleged to be "prejudiced in favor of".[4]

Would this Court have refused to direct Judge Murphy's withdrawal from the Green case on the facts as they appear had the Government petitioned for his disqualification? Would it have premised its refusal on the grounds that under the All Writs Statute "A writ of mandamus or prohibition may be issued only in aid of this court's appellate jurisdiction" and held, as the majority does here, that "Judge Murphy's present decision is subject to review only when and if the petitioner is convicted and sen-

1. At page 20 in his opinion denying Green's motion for disqualification, filed May 9, 1958, Judge Murphy stated:
"For present purposes we assume that Congressman Green did whatever he could, under the circumstances, to help bring about the nominations and confirmations * * *"

2. At page 18 of the opinion referred to in Note 1, Judge Murphy, referring to his action, stated:
"The judge wrote a letter of recommendation to the Governor-elect and to six members of the Policy Committee who might be consulted on the matter *(including the defendant)*". (Emphasis supplied.)

3. In 1953, when Judge Murphy failed to hear from his son, then overseas with the armed forces, he asked Green to ascertain his whereabouts; in 1955 Judge Murphy asked Green to obtain a transfer for his son, then still in the service. On December 17, 1954, when Judge Murphy wrote to Green bespeaking his support for a State appointment for his friend (see Note 2) he concluded with this paragraph "With the best of good wishes for a joyous and happy holiday season to all the Greens and looking forward to seeing you at the Inauguration, I am with warm personal regards."

4. In paragraph 8 of his "Affidavit of Prejudice" Green stated in part:
"I believe that Hon. John W. Murphy is prejudiced in favor of co-defendant Herbert J. McGlinchey and is prejudiced against me and that I shall be unable to receive a fair and impartial trial from him and aver the following facts in support of that belief:
"Co-defendant McGlinchey is also a former member of Congress . . . McGlinchey has entered a plea of 'not guilty'. In the course of the trial, it is possible that there may be questions involving the credibility or veracity of both myself and co-defendant McGlinchey. I know from my own experience and state as a fact that Hon. John W. Murphy was more closely associated with and personally more intimate with Herbert J. McGlinchey than with myself. Hon. John W. Murphy and Herbert J. McGlinchey attended conventions of the Democratic Party together; went to many official and private parties together in Harrisburg, Washington, Philadelphia and Chicago. I am informed by co-defendant McGlinchey that he was of material assistance to Hon. John W. Murphy in obtaining his judicial appointment by contacting other Congressmen and Hon. Francis J. Myers at Judge Murphy's request for the purpose of furthering his ambition to become a United States District Court Judge."

tenced" and "It will then become appealable to this Court"?

I think it would not have done so.

Putting it bluntly, Judge Murphy's continued participation in the Green case would not be "consonant with that regard for fastidiousness which should govern a court" [5] in the performance of the judicial function.

These principles are well settled:

" * * * [J]ustice must satisfy the appearance of justice" [6]; "The guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact." [7]

Applying these principles to the instant case, it cannot be gainsaid that the action of a judge in refusing to withdraw from participation in a criminal proceeding against one whose aid he had invoked to obtain his own judicial appointment and political favor for a lifetime friend, the beneficiary of his interest, falls far short of "satisfying the appearance of justice." Add to this the ingredient of a long-standing personal and political friendship, if such addition be needed.[8]

This Court has present jurisdiction to apply the principles stated under the provisions of the "All Writs Statute" [9]

independent of the "Disqualification Statute".[10]

The majority errs in holding to the contrary. Its error arises out of the narrow construction which it has given to the phrase "appellate jurisdiction" in the "All Writs Statute". It has construed that phrase to mean "a case on appeal". That that is so is apparent from these statements in the majority's opinion:

" * * * Judge Murphy's present decision *is subject to review only* when and if the petitioner is convicted and sentenced. It will then become appealable to this court. * * *

"*A writ of mandamus or prohibition may be issued only in aid of this court's appellate jurisdiction* * *

"The fact is that the petitioner will be put to the expense and trouble of a trial *because Congress has provided for the review of a district judge's determination of the kind here complained of* and under the circumstances here present, *only on the review of a final judgment of conviction.*" (Emphasis supplied.) [11]

5. Universal Oil Products Co. v. Root Refining Co., 1946, 328 U.S. 575, 581, 66 S. Ct. 1176, 90 L.Ed. 1447.

6. Mr. Justice Frankfurter speaking for the Supreme Court in Offutt v. United States, 1954, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11; see also In re Murchison, 1955, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942.

7. Mr. Justice Frankfurter in his statement anent his failure to participate in the consideration and decision in Public Utilities Commission v. Pollak, 1952, 343 U.S. 451, 467, 72 S.Ct. 813, 822, 96 L.Ed. 1068.

8. This must be said. I yield to no one in my regard for Judge Murphy as an able, conscientious and dedicated judge of unquestioned and inflexible probity whose unsullied robe has never worn a stain. I add to that statement my conviction that Judge Murphy would be the first to agree that a judge must not regard his office as sacrosanct, or his robe as

an impenetrable barrier to question; that the judicial robe is not the hallowed vestment of divinity, investing its wearer with all the divine attributes.

9. The All Writs Statute, 28 U.S.C. Sec. 1651(a) provides:
"(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

10. Title 28 U.S.C. Sec. 144 set forth in Note 1 of the majority's opinion.

11. It is true, that in the concluding paragraphs of its opinion the majority, after earlier citing the settled law that "mandamus or prohibition are extraordinary remedies * * * employed justifiably only when rare and exceptional circumstances are present", said " * * * the circumstances are not such as to convince us that we, in the light of our legal

I shall later cite and discuss the overwhelming weight of authority which establishes that "appellate jurisdiction" is not determined by the circumstance of an actual pendency of an appeal, as the majority holds, but *solely* by the dispositive factor whether the proceeding in the lower court which is sought to be affected by the writ of mandamus or prohibition is ultimately reviewable by the appellate court.

Before doing so, I must immediately state that the majority's view that it cannot consider and act upon Judge Murphy's disqualification until after Green has been convicted (should that transpire) and he has appealed from that conviction to this Court, is in complete disregard of Berger v. United States, 1927, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 and contra to the views expressed by the following Courts of Appeals:

*District of Columbia Circuit*

> Barsky v. Holtzoff, No. 126 Misc. April Term, 1947;[12]

*Second Circuit*

> In re Lisman, 1937, 89 F.2d 898; Foster v. Medina, 1948, 170 F. 2d 632, certiorari denied 1949, 335 U.S. 909, 69 S.Ct. 412, 93 L.Ed. 442.

*Fifth Circuit*

> Henry v. Speer, 1913, 201 F. 869;

*Sixth Circuit*

> Williams v. Kent, 1954, 216 F.2d 342;

*Eighth Circuit*

> Cuddy v. Otis, 1929, 33 F.2d 577; Minnesota & Ontario Paper Co. v. Molyneaux, 1934, 70 F.2d 545;

*Ninth Circuit*

> Connelly v. United States District Court, 1951, 191 F.2d 692; Gladstein v. McLaughlin, 1955, 230 F.2d 762.

In the instances cited, applications for writs of mandamus and/or prohibition, based on bias and prejudice, were entertained affecting pending litigation in the district courts which had not attained the status of final disposition and/or appealability.

In two of the cases, Barsky v. Holtzoff and Connelly v. United States District Court, the writs were granted. The jurisdiction of the appellate courts was not challenged.

In the Gladstein case [13] the Ninth Circuit held that mandamus is a proper remedy where a district court judge had refused to disqualify himself after the filing of an affidavit of prejudice. The Court specifically rejected the District Judge's contention that the sufficiency of the affidavit should be considered only on appeal. In doing so it stated, 230 F.2d at pages 763–764:

> "We do not agree that Gladstein should be put to the time and expense of such a proceeding [suspension or disbarment]. We have stated that mandamus is his proper remedy in the case of Connelly v. United States District Court, 9 Cir., 191 F.2d 692. Here are the special circumstances of irreparable injury in the deprivation of Gladstein's right to practice, that is his property loss and the likely irreparable unjust smearing of his reputation during the course of the proceeding below and the months of appellate procedure in this court."

---

discretion, should exercise our power to issue a writ of mandamus or prohibition". That statement is nothing more than dicta in view of the majority's specific holding that this Court is without power to issue the writ except "in aid of this court's appellate jurisdiction" and "Congress has provided for the review of a district judge's" refusal to disqualify himself "only on the review of a final judgment of conviction."

12. The opinion is not reported.

13. The writ was not actually issued in that case because the Court thought it would not be necessary in view of its expressed opinion that the District Court was disqualified.

In all of the other cases cited applications for the writs were denied on the merits.

In Henry v. Speer, 201 F. at pages 871–872, the Court stated:

"In the enactment of section 21 [now Section 144] the plain purpose of Congress was to afford a method of relief through which a party to a suit *may avoid trial* before a judge having a personal bias or prejudice against him or in favor of the opposite party." (Emphasis supplied.)

In Minnesota & Ontario Paper Co. v. Molyneaux, which the majority cited for the proposition that "a remedy is afforded the petitioner [in the instant case] by way of appeal" the Court specifically rejected the contention that it had no jurisdiction to entertain the application for the writ in a pending proceeding in the district court.

This Court, in In re Greene, 3 Cir., 1947, 160 F.2d 517, 519, considered and denied on the merits an application for a writ of mandamus or prohibition, based on bias, in a pending proceeding, although it specifically reserved for future decision the point as to whether the writ could issue in a meritorious case. It may be noted, parenthetically, that the action of the majority, in the instant case, in "not passing presently on the sufficiency of the allegations of the affidavit of bias and prejudice" in contrast to its so doing in the Greene case, presents a baffling anomaly.

In its opinion the majority, in Note 4, rejected the view of the Ninth Circuit in the Connelly and Gladstein cases [14] and "distinguished" Berger v. United States, supra on the fact that "The Berger case actually reached the Court after trial and conviction of the accused." In "distinguishing" the Berger case it subscribed to a similar distinction made by the Seventh Circuit in Korer v. Hoffman, 1954, 212 F.2d 211. The Seventh Circuit, incidentally, as far as my research discloses, is the only circuit holding that the writ of mandamus or prohibition is not issuable to compel disqualification because of bias.

The Berger case is the leading case on disqualification. I disagree with the majority's view that what was there said and held is not applicable here.

The majority has failed to take note of the fact that at the very outset of the Berger opinion it was made clear that the disqualification statute was the crux of the issue presented for determination and that it was the trial judge's failure to disqualify himself *prior to the trial* which was the premise of the Supreme Court's ruling that the district judge " * * * had no lawful right or power to preside as judge on the trial of defendants upon the indictment." 255 U.S. 22, 36, 41 S.Ct. 230, 234. Indeed, the third of the three questions certified to the Supreme Court by the Seventh Circuit was:

"Upon the filing of the said affidavit of prejudice of said Judge Landis, did the said judge have lawful right and power to preside as judge on the trial of plaintiffs in error upon said indictment." 255 U.S. at page 29, 41 S.Ct. at page 232.

To that issue the Supreme Court gave this specific responsive answer:

"To the third [issue] we answer, No; that is, that Judge Landis had no lawful right or power to preside as judge on the trial of defendants upon the indictment." 255 U.S. at page 36, 41 S.Ct. at page 234.

It was with respect to the foregoing that the Supreme Court stated, and by no stretch of the imagination can its statement be regarded as dicta, as follows (255 U.S. at pages 35–36, 41 S.Ct. at page 233.):

"We are of the opinion, therefore, that an affidavit upon infor-

14. The concurrence of the District of Columbia, Second, Fifth and Eighth Circuits with the views of the Ninth Circuit was not noted by the majority anywhere in its opinion.

mation and belief, satisfies the section and that upon its filing, if it show the objectionable inclination or disposition of the judge, which we have said is an essential condition, it is his duty to 'proceed no further' in the case. And in this there is no serious detriment to the administration of justice nor inconvenience worthy of mention, for of what concern is it to a judge to preside in a particular case; of what concern to other parties to have him so preside? * * *

"And to accomplish this end the section withdraws from the presiding judge a decision upon the truth of the matters alleged. Its explicit declaration is that, upon the making and filing of the affidavit, the judge against whom it is directed 'shall proceed no further therein, but another judge shall be designated in the manner prescribed in * * * section twenty-three to hear such matter.' And the reason is easy to define. To commit to the judge a decision upon the truth of the facts gives chance for the evil against which the section is directed. *The remedy by appeal is inadequate. It comes after the trial and, if prejudice exist, it has worked its evil and a judgment of it in a reviewing tribunal is precarious. It goes there fortified by presumptions, and nothing can be more elusive of estimate or decision than a disposition of a mind in which there is a personal ingredient.*" (Emphasis supplied.)

Coming now specifically to the majority's narrow construction of the term "appellate jurisdiction" in the All Writs Statute.

As earlier stated, the majority construes "appellate jurisdiction" to mean an appellate court's jurisdiction to act only when a case has achieved the status of a case on appeal, following its final disposition by the district court.

That construction is in flat disregard of the explicit ruling by the Supreme Court just one hundred and twenty-seven years ago, 1831, in Ex parte Crane, 5 Pet. 190, 8 L.Ed. 92.

There Mr. Chief Justice Marshall stated (at page 193):

"* * * *a mandamus to an inferior court of the United States is in the nature of appellate jurisdiction.*" (Emphasis supplied.)

In consonance with that statement the Supreme Court there held that a writ of mandamus could issue directing a federal district court to sign a bill of exceptions.

Earlier, in Marbury v. Madison, 1803, 1 Cranch 137, 175, 2 L.Ed. 60, the Supreme Court, speaking through Mr. Chief Justice Marshall, said with respect to writs of mandamus:

"To enable this court, then, to issue a mandamus, it must be shown to be an exercise of appellate jurisdiction, or to be necessary to enable them to exercise appellate jurisdiction * * * "

\* \* \* \* \*

"It is the essential criterion of appellate jurisdiction that it *revises and corrects the proceedings in a cause already instituted,* and does not create that cause * * * " (Emphasis supplied.)

Again, almost half a century ago, in McClellan v. Carland, 1910, 217 U.S. 268, 30 S.Ct. 501, 503, 54 L.Ed. 762, the Supreme Court held that a United States court of appeals [15] may issue a writ of mandamus to a district court [16] directing it to proceed with a pending suit which it had stayed to await the commencement and prosecution to final judgment of a suit in the state court.

In the McClellan case the Supreme Court rejected the contention that the then circuit court of appeals "had no jurisdiction to issue the writ of mandamus, as that writ can only be issued in aid of the appellate jurisdiction of the

15. Then a "circuit court of appeals".

16. Then a "circuit court".

circuit court of appeals; and \* \* \* as the court had no jurisdiction of the suit when the application for mandamus was filed, it ought to have been dismissed."

In Ex parte United States, 1932, 287 U.S. 241, 53 S.Ct. 129, 77 L.Ed. 283, the Court issued a writ of mandamus requiring a federal district court in the Eastern District of Pennsylvania to set aside its order denying a petition of the United States Attorney for the issuance of a bench warrant for the arrest of an individual, and directing it to issue the warrant.

In doing so the Court stated 287 U.S. at page 246, 53 S.Ct. at page 130:

"McClelland v. Carland, 217 U.S. 268, 280, 30 S.Ct. 501, 504, 54 L.Ed. 762, laid down the general rule applicable both to this court and to the Circuit Courts of Appeals, *that the power to issue the writ [mandamus] under R.S. § 716 [now § 1651] is not limited to cases where its issue is required in aid of a jurisdiction already obtained, but that 'where a case is within the appellate jurisdiction of the higher court a writ of mandamus may issue in aid of the appellate jurisdiction which might otherwise be defeated by the unauthorized action of the court below [citing cases].'"* (Emphasis supplied.)

Significantly, in holding that it had jurisdiction to directly issue the writ, the Court said 287 U.S. at page 246, 53 S.Ct. at page 130:

"We \* \* \* put our determination upon the broader ground that, *even if the appellate jurisdiction of this court could not in any view be immediately and directly invoked, the issue of the writ may rest upon the ultimate power which we have to review* the case itself by certiorari to the Circuit Court of Appeals in which such immediate and direct appellate jurisdiction is lodged." (Emphasis supplied.)

In Ex parte Republic of Peru, 1943, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014, the Supreme Court held it had jurisdiction, in the exercise of its ultimate power to review, to issue a writ of mandamus or prohibition to restrain a district court from exercise of further jurisdiction in rem, in an admiralty suit.

In doing so it stated 318 U.S. at page 583, 63 S.Ct. at page 796:

"The historic use of writs of prohibition and mandamus directed by an appellate to an inferior court has been to *exert the revisory appellate power* over the inferior court. The writs thus afford *an expeditious and effective means of confining the inferior court to a lawful exercise of its prescribed jurisdiction,* or of compelling it to exercise its authority when it is its duty to do so \* \* \*" (Emphasis supplied.)

The foregoing cases are in direct refutation of the majority's limited construction of "appellate jurisdiction" and establish beyond question this Court's power to now issue a writ of mandamus or prohibition.

It must here be observed that this Court has not in the past invoked its present limited construction of "appellate jurisdiction" with respect to applications for writs of mandamus or prohibition.

In Webster Eisenlohr, Inc. v. Kalodner, 3 Cir., 1944, 145 F.2d 316, certiorari denied 325 U.S. 867, 65 S.Ct. 1404, 89 L.Ed. 1986, for reasons extraneous to the point at issue, this Court held that it was proper to issue a writ of mandamus or prohibition to compel a district court, to withdraw, at its very inception, an order of appointment of a master to investigate alleged improper action by a defendant. There no final disposition, or ruling, other than the mooted appointment of the master, had been made by the district court.

It is pertinent to note that the spokesman for the majority in the instant case, Chief Judge Biggs, although he dissented

from the broad sweep of the majority's disposition in Webster Eisenlohr, specifically stated that he agreed that a modified writ of mandamus or prohibition should issue to the district court.

The prevailing rule that appellate jurisdiction is not determined alone by the pendency of an appeal was succinctly stated in Minnesota and Ontario Paper Co. v. Molyneaux, earlier referred to, as follows 70 F.2d at page 546:

> "In limine, we are met by a challenge from respondent of the jurisdiction of this court to entertain the application [for a writ of mandamus or prohibition]. The jurisdiction of federal courts as to such writs is statutory * * * *This statute [the All Writs Statute] seems to be a legislative declaration of the judicially declared rule that the use of original writs might be included in appellate jurisdiction.* * * *
>
> "One of the limitations of this section is to such writs of this character as 'may be necessary for the exercise of their respective jurisdictions.' The jurisdiction of the Court of Appeals is purely appellate * * Therefore Courts of Appeals can entertain such writs only where they are 'necessary for the exercise of' appellate jurisdiction. *Whether such appellate jurisdiction exists is determined, not alone by the pendency of an appeal, but by whether the proceeding in the lower court to be affected by the writ is 'within the appellate jurisdiction of the higher court.'* Ex parte United States, 287 U.S. 241, 246, 53 S.Ct. 129, 130, 77 L.Ed. 283." (Emphasis supplied.)

It would be flogging a dead horse to dwell further on the majority's view that this Court is without jurisdiction to issue the writ of mandamus or prohibition sought by Green in the instant case.

The authorities cited amply establish that this Court has present jurisdiction to issue the writ of mandamus sought by Green in accordance with the provision in the "All Writs Statute" that it "may issue all writs necessary or appropriate in aid of * * * its jurisdiction * * * agreeable to the usages and principles of law." [17]

That brings me to consideration of the question as to whether the writ sought here should be issued.

On that score I will not dwell at length on the premise stated at the outset of this dissent—"Justice must satisfy the appearance of justice" and Judge Murphy's continued participation in the Green case in view of the record of their association would not "satisfy the appearance of justice."

As was so well said in Yazoo & M. V. Railroad Co. v. Kirk, 1912, 102 Miss. 41, 58 So. 710, 834, 42 L.R.A.,N.S., 1172 cited with approval in Petrey v. Holliday, 1917, 178 Ky. 410, 199 S.W. 67, 71:

> "All are interested in the integrity, independence, and impartiality of the judiciary, the most important and powerful branch of our government. Not only must the judges presiding over the courts be honest, unbiased, impartial, and disinterested in fact, but it is of the utmost importance that all doubt or suspicion to the contrary must be jealously guarded against, and, if possible, completely eliminated."

and in State ex rel. Bennett v. Childers, Okl.1940, 105 P.2d 762, 763, 764:

> "Not only is it their [judges'] duty to decide and adjudge the rights of litigants honestly, fairly and impartially, but it is also their duty to scrupulously refrain from sitting in any case, or under any circumstances, which might reasonably tend to give rise to doubt or suspicion as to their complete disinterestedness * * *
>
> "'* * * It is to be regretted that a judge should try a case in

---

17. Appellate courts of fourteen states in thirty-four cases have issued writs of mandamus and/or prohibition in disqualification cases based on bias and prejudice.

which there is the least ground upon which to base a claim for his disqualification, and, if an error is ever made as to disqualification, it should be in favor of the disqualification rather than against it.' "

and again in Payne v. Lee, 1946, 222 Minn. 269, 24 N.W.2d 259, 262, citing State ex rel. Barnard v. Board of Education, 19 Wash. 8, 17, 52 P. 317, 320, 40 L.R.A. 317:

" 'The principle of impartiality, disinterestedness, and fairness on the part of the judge is as old as the history of the courts; in fact, the administration of justice through the mediation of courts is based upon this principle * * * Caesar demanded that his wife should not only be virtuous, but beyond suspicion; and the state should not be any less exacting with its judicial officers, * * * for, as was well said by Judge Bronson in People v. Suffolk Common Pleas, 18 Wend., N.Y., 550:

" ' "Next in importance to the duty of rendering a righteous judgment, is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge." ' "

Viewed against the background of what has been stated, what real difference does it make as to which party in the Green case moved to disqualify Judge Murphy?

Whether Judge Murphy is disqualified because he may "lean backward" against Green because of their prior friendship and association is not the critical issue; what is critical is the existence of friendship and association.

The concurring judges have evidenced their appreciation of this critical issue in their suggestion to Judge Murphy that he " * * * consider whether, however free of bias he may feel, *the also important appearance of complete impartiality in the administration of justice would not best be served by his stepping aside*" and their further statement that,

"Judges from time to time elect not to try cases, which they are sure they can try fairly and objectively, because of their concern *to avoid any substantial doubt which circumstances beyond their control may create in the public mind about the impartiality of their administration of justice in the matters at hand.*" (Emphasis supplied.)

The only substantial difference between my view and that of the concurring judges with respect to the considerations stated is, that they believe they "must be left to the discretion and sensitive preception" of the trial judge and "cannot effectively be controlled by appellate rulings", while I believe, that since the problem is now presented to this Court it must inescapably exercise that "discretion and sensitive perception."

I differ with the concurring judges in two further respects:

First, they construe the majority as premising the denial of the writ on the narrow ground of absence of "extraordinary enough circumstances" and, second, they believe that Green's affidavit of bias "is plainly insufficient" under Section 144 because "Congress used 'bias or prejudice' in the conventional sense of enmity or hostility" in that section, and "Here the very opposite is charged", viz., a "leaning backward" theory.

As to the first respect:

As earlier stated, particularly so in Note 11, the majority premised its denial of the writ on the specific absence of "appellate jurisdiction". That it did not do so on the ground of absence of "extraordinary enough circumstances" is clearly evident from the majority's statement that "In so holding we desire to make it plain that *we are not passing presently on the sufficiency of the allegations of the affidavit of bias and prejudice.*" (Emphasis supplied.)

As to the second respect:

The concurring judges focused their attention solely on the issue of the applicability of Section 144 and, in so doing, inadvertently, I am certain, failed to give consideration to the broad sweep of our jurisdiction under the "All Writs Statute", although they subscribed to the existence of that jurisdiction.

In conclusion, I should like to discuss briefly the "leaning backward" aspect of this case, although I desire to make it clear that I do not premise my view that the writ should be granted on that aspect. However, that does not mean that the "leaning backward" aspect does not merit consideration.

The sum of Green's "leaning backward" contention is that Judge Murphy, because of their long-standing prior friendship and association, will consciously or subconsciously, through the trial, be affected by its existence.

As Green put it in his brief here:

> "If a motion for judgment of acquittal were to be made before the respondent judge, could he pass upon that issue without considering, consciously or subconsciously, whether he would be accused of doing a favor in return for his friend? * * *
>
> "If the judge should grant a motion for acquittal, will the public think he is favoring an old friend? Must the judge deny a proper motion to forestall such criticism? Is the defendant, under the Constitution, required to take this risk? * * *
>
> "Obviously, the facts of the relationship between the defendant and the respondent, and the relationship between the respondent and co-defendant McGlinchey, present ample facts from which any mind might properly draw an inference of bias or prejudice."

The nub of Green's contention was well-stated by the concurring judges as follows:

> "The sole complaint is that the judge may overcompensate for his inclination toward the accused by leaning backward."

I think such complaint merits consideration.

Certainly it cannot be gainsaid that the detachment which is an indispensable ingredient of the judicial attitude does not exist where a judge presides at the trial of one who has been his long-time friend and benefactor.

As was stated in 48 C.J.S. Judges § 72, p. 1039:

> "The underlying principle of rules for disqualification of judges is that no judge should preside in a case in which he is not *wholly free*, disinterested, impartial, and independent." (Emphasis supplied.)

Can it be said that the trial judge here is "wholly free"?

Judges are human beings and not mechanical machines dispensing undistilled justice on a push-button basis. They are not judicial Univacs or mechanized "brains".

As was so well said by Mr. Justice Frankfurter in his concurring opinion in Pennekamp v. State of Florida, 1946, 328 U.S. 331 at page 357, 66 S.Ct. 1029, at page 1042, 90 L.Ed. 1295:

> " * * * judges are also human, and we know better than did our forbears how powerful is the pull of the unconscious and how treacherous the rational process."

Mr. Justice Cardozo, in speaking of "The Subconscious Element in the Judicial Process" [18] said

> "I have spoken of the forces which judges avowedly avail to shape the form and content of their judgments. Even these forces are seldom fully in consciousness. They lie so near the surface, however, that their existence and influence are not likely to be disclaimed * * *
> *Deep below consciousness are other*

---

[18]. Cardozo's "Nature of Judicial Process", pp. 168–69; Hall's "Selected Writings of Benjamin Nathan Cardozo", p. 178.

*forces, the likes and the dislikes, the predilections and the prejudices, the complex of instincts and emotions and habits and convictions, which make the man, whether he be litigant or judge . . .* The great tides and currents which engulf the rest of men, do not turn aside in their course and pass the judges by." (Emphasis supplied.)

To say more would be "to gild refined gold".[19]

I would grant the writ.

See also, 253 F.2d 233.

---

19. Sallust, Catilina, Ch. li, sec. 1: "All men who deliberate upon difficult questions should be free from hatred and friendship, anger and pity."

Lord Chesterfield, Letters, 13 April, 1752: "Our prejudices are our mistresses; reason is at best our wife, very often heard indeed, but seldom minded."